**In the Matter of Rodger ROWLES, Debtor.**

**Patricia L. McARTOR, Plaintiff,**

v.

**Rodger ROWLES, Defendant.**

**Bankruptcy No. B85–00625–Y. Adv. No. 85–0065.**

United States Bankruptcy Court, N.D. Ohio.

Oct. 31, 1986.

Joseph C. Lucci, Youngstown, Ohio, James Beck, Canfield, Ohio, for debtor/defendant Rodger D. Rowles.

Francis J. Marini, Sebring, Ohio, for plaintiff, Patricia McArtor.

Robert P. Safos, Warren, Ohio, trustee.

## MEMORANDUM OPINION

WILLIAM T. BODOH, Bankruptcy Judge.

This cause is before the Court on the Complaint of Plaintiff, PATRICIA McARTOR, to determine the dischargeability of a

debt owed to her by Debtor, RODGER ROWLES. The Complaint has been brought pursuant to 11 U.S.C. Sec. 523(a)(5) for a determination of whether the debt owed to Plaintiff constitutes nondischargeable alimony, maintenance or support under the terms of that Code Section.

## FACTS

Plaintiff and Debtor are former spouses. One child was born to the parties during their marriage; to wit, Dale E. Rowles, born April 16, 1971. Plaintiff was not employed during the marriage but did, at times, assist Debtor in the conduct of his business, Rowles Construction.

On October 28, 1983, a Decree of Dissolution of the marriage of the parties was entered by the Common Pleas Court of Columbiana County, Ohio. A separation agreement, entered into by the parties on September 12, 1983, was incorporated into the dissolution decree. Under the terms of the separation agreement, Plaintiff was to retain custody of the minor child. Debtor agreed to pay to Plaintiff the sum of One Hundred Fifty & 00/100 Dollars ($150.00) per month as child support. In addition, Debtor also agreed to pay the following amounts: Twenty & 00/100 Dollars ($20.00) per month for the child's allowance; Twenty & 00/100 Dollars ($20.00) per month for Plaintiff's clothing; Thirty & 00/100 Dollars ($30.00) per month for Plaintiff's personal spending money; Two Hundred Fifty & 00/100 Dollars ($250.00) initially for Plaintiff's emergency use; all amounts needed for clothing for the minor child; rent and utilities for Plaintiff; all gasoline charges incurred by Plaintiff and any automobile repair charges, automobile loan payments and insurance for Plaintiff's car; all medical expenses of Plaintiff and the minor child; and all college registration fees for Plaintiff, including tuition, books, parking fees and college-related uniform costs.

Under the terms of the separation agreement, Debtor was obligated to pay all of the above amounts until Plaintiff received her certification and found gainful employment as a registered nurse. Upon the occurrence of such events, Debtor's obligations to Plaintiff under the terms of the separation agreement were to cease, with the exception that Debtor would be obligated to pay child support in the amount of Twenty-Five & 00/100 Dollars ($25.00) per week until the child reached the age of majority.

Plaintiff has subsequently received her certification as a registered nurse and, as of October, 1985, is gainfully employed as a registered nurse.

Under the terms of the separation agreement, Debtor received the business known as "Roger D. Rowles, Building and Remodeling," aka "Rowles Construction," free and clear of any and all claims of Plaintiff. The marital home was to be sold by July 4, 1985, upon which event Debtor was to pay to Plaintiff the sum of Five Thousand & 00/00 Dollars ($5,000.00), or one half of the net proceeds upon sale, whichever was greater, but in no event was Plaintiff to receive more than Ten Thousand & 00/100 Dollars ($10,000.00). If the property was not sold by July 4, 1985, Debtor was to pay to Plaintiff the lump sum of Five Thousand & 00/100 Dollars ($5,000.00) at that time.

Debtor was represented by counsel during the negotiations relating to the separation agreement. Plaintiff was not represented by counsel.

Debtor apparently began making payments to Plaintiff under the terms of the agreement. However, in January 1984, expenses which Debtor was obligated under the terms of the separation agreement to pay began to accrue. In the fall of 1984, Plaintiff filed a motion in the state court to cite Debtor for contempt for failure to pay certain of the obligations due under the separation agreement. Per Plaintiff's "Exhibit D," it appears that Plaintiff was claiming that, as of October 26, 1984, the sum of Four Thousand, Four Hundred Sixty-Three & 41/100 Dollars ($4,463.41) was owed to her under the terms of the separation agreement. Apparently because Debtor obtained custody of the minor child in March of 1984, and because Plaintiff began

sharing living expenses with a roommate at about the same time, the state court entered a judgment against Debtor, for unpaid "alimony," in the lesser amount of Two Thousand, Five Hundred & 00/100 Dollars ($2,500.00).

Subsequent to the entry of the state court judgment, amounts continued to accrue for debts owed under the terms of the separation agreement. These expenses are set forth in Plaintiff's "Exhibit C." The amounts claimed are largely related to Plaintiff's monthly clothing and personal spending money allowance, gasoline, and college expenditures. On cross-examination, Plaintiff conceded that the sums claimed by her for her State Board photo, her State Board license, the State Board test, postage, a Board review, and a motel in Columbus (a total of One Hundred Seventy-Six & 98/100 Dollars ($176.98)) do not fall under the terms of the separation agreement. In sum, Plaintiff is claiming that a total amount of Three Thousand, Nine Hundred One & 31/100 Dollars ($3,901.31) is due her under the terms of the separation agreement and that this amount constitutes non-dischargeable alimony, maintenance or support under 11 U.S.C. Sec. 523(a)(5).

Debtor filed a Petition for Relief under Chapter 7 of the Bankruptcy Code on July 7, 1985.

## LAW

11 U.S.C. Sec. 523(a)(5) provides:

a) A discharge under Section 727, 1141, or 1328(b) of this Title does not discharge an individual debtor from any debt—

.    .    .    .    .

5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or other order of a court of record or property settlement agreement, but not to the extent that—

.    .    .    .    .

B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support. . . .

Debtor does not contest the fact that amounts are due Plaintiff under the terms of the separation agreement. However, Debtor contends that these amounts constitute a "property settlement" and are thus dischargeable under the terms of Section 523(a)(5). In support of his assertion, Debtor cites the case of *Long v. Calhoun* (*In re Calhoun*), 715 F.2d 1103 (6th Cir. 1983). In that case, the Sixth Circuit Court of Appeals was faced with the issue of when an assumption of joint debts pursuant to a separation agreement constitutes nondischargeable alimony, maintenance or support under Section 523(a)(5). In determining that the case should be remanded back to the bankruptcy court for further proceedings, the court set forth a three-pronged inquiry to be used by courts in considering the dischargeability of a continuing obligation to hold a former spouse harmless on past marital debts.

First, the bankruptcy court must ascertain whether the state court or the parties to the divorce intended to create a support obligation through the assumption of joint debts. If the court finds that the parties so intended, then the court must next inquire whether the assumption has the effect of providing the support necessary to insure that the daily needs of the former spouse and any children are met. Finally, if the court finds that the continuing assumption of joint debts is necessary, the court must determine that the amount of support represented by the assumption is not so excessive that it is manifestly unreasonable under traditional concepts of support.

Debtor contends that the *Calhoun* analysis is generally applicable to all cases involving a determination under Sec. 523(a)(5). In so arguing, Debtor contends that Plaintiff has not satisfied her burden of proof with regard to the second inquiry of *Calhoun*, i.e., whether the assumption

of the debt has the effect of providing the support necessary to insure that the daily needs of the former spouse are met. With regard to this inquiry, Debtor contends that *Calhoun* dictates that the Court must look at the financial circumstances of Plaintiff at the time of the trial on the Complaint to Determine Dischargeability, citing *Calhoun:*

> The distribution or existence of other property, for example, may make the continuing assumption of joint debts unnecessary for support, as might drastic changes in the former spouse's capabilities for self-support.[9]

715 F.2d at 1109.

The so-called "present needs test" urged by Debtor has been adopted by some courts, *Miller v. Miller* (*In re Miller*), 17 B.R. 717 (Bankr.W.D.Wis.1982); *Tillett v. Tillett* (*In re Tillett*), 22 B.R. 907 (Bankr. W.D.Oklahoma 1982); *Warner v. Warner* (*In re Warner*), 5 B.R. 434 (Bankr.D.Utah 1980), but has been expressly rejected by others. *See Harrell v. Sharp* (*In re Harrell*), 754 F.2d 902 (11th Cir.1985). Debtor argues that if the "present needs test" is applied in this case, as he contends it should be, then the Court must find that the obligations in question here will not have the actual effect of providing the support necessary to insure that Plaintiff's daily needs are met, since Plaintiff is now gainfully employed and quite able to support herself. Debtor thus contends that this Court must find the debt in question here to be dischargeable.

Plaintiff contends that the "present needs test" referenced in *Calhoun* was never meant by the Sixth Circuit to be applied in cases involving obligations which clearly fall within traditional concepts of support. Plaintiff asserts that if it appears to the Court that the contested obligations are clearly in the nature of alimony, maintenance, or support, the inquiry ends there and the Court must find the obligation to be nondischargeable.

The Court agrees with Plaintiff. Our determination is hinged upon one very important footnote found in the *Calhoun*

opinion. After setting forth the second inquiry and noting that "drastic changes" in a former spouse's capabilities for self-support might make the continuing assumption of joint debts "unnecessary for support," the court states in a footnote:

> [9] At issue in the present case is solely the dischargeability of a continuing obligation to hold the former spouse harmless on past marital debts. There has been no claim made that Calhoun is in arrears on past payments due under this obligation. The dischargeability of such unpaid past liabilities requires an analysis distinct from consideration of whether the continuing obligation to hold harmless may be discharged.

715 F.2d 1103, 1109(n)(9).

We presume that Footnote 9 was included for the purpose of exempting from the *Calhoun* analysis, and especially from the "present needs test," cases which involve past-due obligations which are clearly in the nature of support. If such an exemption had not been provided, a debtor could theoretically control the character of debts owed to a former spouse simply by not paying amounts clearly due for support so that the spouse is forced to be self-supporting and then claiming, after the bankruptcy petition is filed, that the debts are a dischargeable property settlement simply because the former spouse is now self-supporting. Clearly, it was not the intent of Congress to subject to scrutiny obligations which are very clearly in the nature of support or maintenance, nor do we think the Sixth Circuit intended such a result in its drafting of the *Calhoun* decision. Footnote 9 is a clear indication of this.

Aside from the foregoing, Debtor further contends that the debt is not in the nature of alimony, maintenance, or support since the parties did not intend to create a support obligation in the separation agreement. Debtor asserts that Plaintiff voluntarily relinquished any rights which she may have had in Debtor's business in exchange for his agreement to "support" her until she completed her education and found gainful employment as a registered

**632**

nurse. Debtor testified that he intended to "buy her out" of her interest in the business and that the parties had discussed the possibility of Plaintiff receiving a Twenty-Five Thousand & 00/100 Dollar ($25,000.00) lump sum payment from Debtor. Debtor testified that since he did not have the money on hand at the time, he agreed to "support" her until she finished school.

The Court finds Debtor's argument to be without merit. First, we find Debtor's testimony to the effect that the parties discussed the possibility of Plaintiff's receiving the sum of Twenty-Five Thousand & 00/100 Dollars ($25,000.00) in "exchange" for her "interest" in the business to be something less than credible. Secondly, the Court cannot imagine a more pure form of "support" as that term is used in the context of Sec. 523(a)(5). The payments were to continue only until Plaintiff found gainful employment as a registered nurse. One need only look at the open-ended nature of Debtor's obligations under the separation agreement to reach the logical conclusion that the obligations were included in the agreement as and for a rehabilitative form of "support" and that the parties intended the obligations to act as such.

The Court finds that the sum due Plaintiff under the terms of the separation agreement, in the amount of Three Thousand, Nine Hundred One & 31/100 Dollars ($3,901.31), constitutes alimony, maintenance, or support within the meaning of Sec. 523(a)(5). As such, it is nondischargeable.

In making its determination, the Court has considered all of the evidence presented, whether or not referred to in this Opinion.

An appropriate Order shall issue.