In re Edward **SWICZKOWSKI**, Debtor.

Edward **SWICZKOWSKI**, Plaintiff,

v.

Juanita F. **NEAGLEY**, et al.,
Defendants.

Bankruptcy No. 86–0236.
Related Case No. 85–01500.

United States Bankruptcy Court,
N.D. Ohio, W.D.

March 3, 1988.

Michael D. Reed, Sr., Toledo, Ohio, for plaintiff.

Peter L. Moran, Toledo, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court on Debtor's Complaint for Injunction and to Determine Dischargeability. At Pre–Trial, the parties agreed to submit this matter to the Court on Briefs. Both parties filed Briefs supporting their respective positions on the dischargeability of the debt in question. The Court has reviewed the written arguments of counsel, as well as the entire record in this case. Based on that review, and for the following reasons, the Court finds that the debt should be nondischargeable.

## FACTS

The facts in this case do not appear to be in dispute. The Plaintiff–Debtor, Edward J. Swiczkowski, and the Defendant, Juanita F. Swiczkowski Neagley, were married in Holland, Ohio on February 19, 1972. Two children were born as issue of the marriage. Both children are minors. Juanita F. Swiczkowski Neagley (hereinafter "Mrs. Neagley") filed for divorce on June 20, 1984. On May 12, 1985, the parties reached an agreement which was approved by the Domestic Relations Court. The divorce decree was filed on July 24, 1985, with an order setting forth custody, support, and alimony, and incorporated the parties' agreement as an order of the Domestic Relations Court.

Paragraph 8.E. of the divorce decree stated:

The plaintiff shall retain the 1982 Bonneville, with the defendant to pay the indebtedness due on said automobile and save plaintiff harmless therefrom; that the defendant shall not incur any further obligation on said automobile and will execute the necessary power of attorney to enable the plaintiff to obtain license plates;

On August of 1985, a hearing was held in Domestic Relations Court relative to the 1982 Bonneville. The Referee found that

the divorce decree had been violated and awarded a lump sum judgment against the Debtor in the amount of Six Thousand Four Hundred Dollars ($6,400.00).

On September 20, 1985, the Debtor filed for Bankruptcy under Chapter 7 of the Bankruptcy Code. The Debtor's former wife was listed as an unsecured creditor as to any amount owing under "hold harmless" clauses which were not in the nature of alimony, maintenance or support. The 1982 Bonneville was repossessed by General Motors Acceptance Corporation for non-payment.

On November 19, 1985, the former wife of the Debtor filed a "Motion for Relief from Judgment" in the Domestic Relations Court. The Motion for Relief from Judgment states "That since the order was mde [sic] the defendant has filed bankruptcy to defeat the order of the court and to deny the plaintiff her share of the division of the marital assets." Mrs. Neagley asked to have the judgment vacated, and that she be awarded alimony "at the rate of $500.00 per month until paid."

The Debtor received a discharge on January 6, 1986.

On May 2, 1986, the Domestic Relations Court held a hearing on Mrs. Neagley's Motion. After the hearing, the court revised the original divorce decree, *nunc pro tunc*, changing only paragraph 8.E. of the original divorce decree. The *nunc pro tunc* revision of paragraph 8.E. results in the paragraph stating:

The plaintiff shall be awarded as alimony, the 1982 Bonneville automobile, with the defendant to pay the indebtedness due on said automobile and save plaintiff harmless therefrom; that the defendant shall not incur any further obligation on said automobile and will execute the necessary power of attorney to enable the plaintiff to obtain license plates;

On October 17, 1986, the Debtor filed a Complaint for Injunction and to Determine Dischargeability of Debt which has raised the issues which are the subject of this Opinion.

## LAW

The dischargeability of the disputed obligation is governed by 11 U.S.C. § 523(a)(5), which states in pertinent part:

### § 523 Exceptions to discharge

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with state or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support; ...

■ Under this provision, obligations which are imposed by a divorce decree, and which are in the nature of alimony, maintenance or support, are not dischargeable in a proceeding under Chapter 7. It is well established that statements within a divorce decree which label a particular obligation as alimony or property settlement do not necessarily determine the nature of the obligation under federal bankruptcy law. *In re Singer*, 787 F.2d 1033, 1035 (6th Cir.1986); *In re Conrad*, 33 B.R. 601, 603 (Bankr.N.D.Ohio 1983). The Court must examine the facts and circumstances of each case, and make a determination based upon federal bankruptcy law. *In re Calhoun*, 715 F.2d 1103, 1107 (6th Cir. 1983); *In re Hoover*, 14 B.R. 592 (Bankr.N. D.Ohio 1981). The Court may also look to state law for guidance. *In re Calhoun*, *supra*, at 1108–09.

The Court requested the parties to address the issue of the effect of the Domestic Relations Court's *nunc pro tunc* order. The parties did not choose to present arguments on the subject. Upon review of Ohio law, the pleadings and exhibits, it appears that the Domestic Relations Court's *nunc*

*pro tunc* Judgment Entry does have retro-active effect. Apparently, no appeal of the Judgment Entry was filed.

The Ohio Court of Appeals reviewed the purposes of *nunc pro tunc* orders in *McKay v. McKay,* 24 Ohio App.3d 74, 493 N.E.2d 317 (1985). The Court of Appeals stated:

> The purpose of a *nunc pro tunc* order is to have the judgment of the court reflect its true action. The power to enter a judgment *nunc pro tunc* is restricted to placing upon the record evidence of judicial action which has actually been taken. It does not extend beyond the power to make the journal entry speak the truth, and can be exercised only to supply omissions in the exercise of functions which are merely clerical. It is not made to show what the court might or should have decided, but what it actually did decide.

*McKay v. McKay, supra,* 24 Ohio App.3d at 75, 493 N.E.2d at 318. (Citations omitted).

■ Therefore, under *McKay v. McKay,* the decision must be one the Domestic Relations Court made prior to the bankruptcy. Accordingly, there can be no inference that the *nunc pro tunc* order reflects a determination of dischargeability under federal bankruptcy law. Consequently, the *nunc pro tunc* judgment entry by the Domestic Relations Court does not preclude this Court from considering the dischargeability of the Debtor's obligation because of collateral estoppel or res judicata. *See, Spilman v. Harley,* 656 F.2d 224 (6th Cir.1981); *In re Rickman,* 79 B.R. 753 (Bankr.W.D. Tenn.1987), *In re Weitzel,* 72 B.R. 253 (Bankr.N.D.Ohio 1987); Advisory Committee Note to Bankruptcy Rule 4007(b).

Other Bankruptcy Courts have recognized *nunc pro tunc* orders in dischargeability proceedings. *See, Matter of Coverdale,* 65 B.R. 126 (Bankr.M.D.Fla.1986); *Matter of Myers,* 61 B.R. 891 (Bankr.N.D. Ga.1986); *In re Melton,* 34 B.R. 323 (Bankr.E.D.Va.1983); *In re Cain,* 29 B.R. 591 (Bankr.N.D.Ind.1983).

Under the *Calhoun* decision, the criteria for determining whether payments by a debtor are in the nature of alimony or property settlement is:

> (a) whether the *intent* of the state court or the parties was to create a support obligation;
>
> (b) whether the support provision has the actual *effect* of providing necessary support;
>
> (c) whether the amount of support is so excessive as to be *unreasonable* under traditional concepts of support; and
>
> (d) if the amount of support is unreasonable, how much of it should be characterized as nondischargeable for purposes of federal bankruptcy law.

*In re Singer,* 787 F.2d 1033, 1036 (6th Cir.1986) (Guy, J., concurring).

■ A review of the pleadings reflects that Mrs. Neagley was awarded custody of the two minor children in the divorce decree. As this Court has noted in previous cases, transportation is an essential commodity for a family with minor children. A dependable vehicle is a necessity for both everyday and emergency transportation. *In re Conrad,* 33 B.R. 601, 604 (Bankr.N. D.Ohio 1983). It appears to this Court, under either version of the decree of dissolution, that the parties and the Domestic Relations Court intended to create a support obligation. They knew Mrs. Neagley would have custody of the two minor children. Both the Domestic Relations Court and the parties were aware of the need for reliable transportation for the children and the Debtor's former spouse. Consequently, the Court finds that the intent of the parties and the state court was to create a support obligation.

The next portion of the *Calhoun* test is complicated by the fact that the vehicle was repossessed. The obvious question raised in this case is: how can a repossessed vehicle have the effect of providing necessary support? On the other hand, where is the equity in allowing a Debtor to control the character of an obligation by simply not paying amounts clearly owed for support, and after the former spouse is forced to be self-supporting as to that obligation, then permitting the Debtor to argue that the obligation did not have the effect

of providing necessary support because the former spouse has been self-supporting without it? Cf. *In re Rowles*, 66 B.R. 628, 631 (Bankr.N.D.Ohio 1986). (The Court raised this concern in connection with problems related to application of a "present needs test" within the framework of *Calhoun*.)

The *Calhoun* opinion appears to recognize this concern in a footnote:

> At issue in the present case is solely the dischargeability of a continuing obligation to hold the former spouse harmless on past marital debts. There has been no claim made that Calhoun is in arrears on past payments due under this obligation. The dischargeability of such unpaid past liabilities requires an analysis distinct from consideration of whether the continuing obligation to hold harmless may be discharged.

*In re Calhoun*, 715 F.2d at 1109 n. 9.

It should be noted that footnote 9 follows the section which states the second prong of the *Calhoun* test. Namely, that the obligation must have the effect of providing necessary support.

In light of *Calhoun's* footnote 9, some courts have held that the *Calhoun* test has only limited application in cases arising under § 523(a)(5). *See, Matter of Rowles*, *supra* at 631; *In re Troxell*, 67 B.R. 328, 331 (Bankr.S.D.Ohio 1986). Other courts have asserted that *Calhoun* has general applicability. *See, In re Lineberry*, 55 B.R. 510, 515 (Bankr.W.D.Ky.1985); *In re Helm*, 48 B.R. 215, 220 (Bankr.W.D.Ky. 1985); *In re Wesley*, 36 B.R. 526, 529 n. 1 (Bankr.S.D.Ohio 1983). Courts have also applied the *Calhoun* test to past due obligations without detailing the reasoning which led to a decision that an unpaid obligation could have the effect of providing necessary support. The following cases have used the *Calhoun* test in finding past due obligations to be nondischargeable under § 523(a)(5): *In re Leupp*, 73 B.R. 33 (Bankr.N.D.Ohio 1987) (second mortgage in default); *In re Mizen*, 72 B.R. 251 (Bankr. N.D.Ohio 1987) (former spouse paid second mortgage); *In re Wright* 51 B.R. 630 (Bankr.S.D.Ohio 1985) (former spouse paid

part of second mortgage and refinanced); *In re Elder*, 48 B.R. 414 (Bankr.W.D.Ky. 1985) ($100.00 a month not paid for three years prior to bankruptcy filing); *In re Perkins*, 36 B.R. 618 (Bankr.M.D.Tenn. 1983) (past due alimony and child support).

The differences between the cases which apply the *Calhoun* test, and those which do not, appear to be primarily based on the approach the courts use, rather than in the results they reach. In *Rowles, supra*, the Debtor urged the Court to adopt and apply the "present needs test" to past due obligations under the second prong of the *Calhoun* test. The Debtor in *Rowles* argued that since the Plaintiff was currently gainfully employed, and thereby able to support herself, the past due obligation should be dischargeable under *Calhoun*. The Court disagreed, holding that *Calhoun* did not apply to past due obligations which are clearly in the nature of support, and found the obligation nondischargeable.

The problem arises in deciding, and supporting, what obligations are "clearly" in the nature of support. Further, it does not appear that a "present needs test" is the only alternative in applying the *Calhoun* criteria to past due obligations. Notably, all the cases cited in *Rowles* as supporting a present needs test were decided in 1982 or earlier. More recent decisions have imposed tougher standards on debtors who seek to discharge obligations arising from a divorce decree. One example of this trend is the Sixth Circuit's decision in *In re Singer*, 787 F.2d 1033 (6th Cir.1986), holding that where there is a property settlement in "connection" with alimony, maintenance or support, the debt is nondischargeable.

This Court will follow the line of decisions which hold that *Calhoun* has general applicability to all cases arising under § 523(a)(5). This Court will determine whether the divorce related obligation *would have* provided necessary support at any time from the date the obligation became due to the date the obligation is submitted to this Court for a decision on dischargeability under § 523(a)(5).

Therefore, reliable transportation being an essential commodity for a family with minor children, the vehicle would have provided necessary support to the Debtor's former family if the obligation had been paid and the vehicle had not been repossessed. *In re Conrad, supra,* at 604; *In re Smotherman,* 30 B.R. 568, 571 (Bankr. N.D.Ohio 1983).

Finally, a review of the Debtor's schedules reflects that the Debtor's gross income for 1983 was Thirty-two Thousand Five Hundred Dollars ($32,500.00). In 1984, the Debtor's gross income was Thirty-five Thousand Five Hundred Dollars ($35,500.00). The Debtor had worked for the same employer for twelve (12) years. The divorce decree reflects that the parties were married for over thirteen (13) years and had two (2) children. The Domestic Relations Court found that the Debtor had been guilty of gross neglect of duty and extreme cruelty towards his former wife. Under these circumstances, the award of a three year old car is not so excessive as to be manifestly unreasonably under traditional concepts of support, even when viewed in conjunction with the other amounts ordered for alimony and child support.

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

ORDERED that the obligation to pay for the 1982 Bonneville be, and is hereby, nondischargeable.

It is FURTHER ORDERED that the method and timing of the nondischargeable obligation is left to be determined by the Domestic Relations Court.