**In re Paul Michael WRIGHT, SS# 301–54–8043, Debtor.**

**Marsha L. WRIGHT, Plaintiff,**

v.

**Paul Michael WRIGHT, Defendant.**

**Adv. No. 1–84–0062.**
**Bankruptcy No. 1–84–00108.**

United States Bankruptcy Court,
S.D. Ohio, W.D.

Jan. 29, 1985.

Leslie Spillane, Hamilton, Ohio, for plaintiff.

John A. Garretson, Hamilton, Ohio, for defendant.

DECISION

BURTON PERLMAN, Bankruptcy Judge.

In this adversary proceeding the complaint seeks a determination of the dischargeability of a debt under 11 U.S.C. § 523(a)(5). Plaintiff is the former wife of the defendant. Defendant is the debtor in the related bankruptcy case. This matter has been submitted for decision on the parties' stipulation of fact and memoranda of law setting forth their respective positions.

The stipulation of fact provides that plaintiff and defendant were married in 1973, obtained a decree of dissolution of that marriage in 1983, and had one child from the marriage who is presently seven years of age.

A Separation Agreement (hereinafter "Agreement") was entered into between

the parties and became part of the dissolution decree. Incorporated by reference into the stipulation of fact, the Agreement provides that plaintiff is to have the care, custody and maintenance of the minor child and that the defendant will provide child support in the amount of $35.00 per week. Article 6 of the Agreement entitled "Alimony" states that there will be none. Article 7 of the Agreement entitled "Division of Property" provides that:

> ... husband shall convey to wife the parties' marital residence located at 511 Franklin Street, Hamilton, Ohio. Wife shall execute a note and mortgage for $4,000.00 payable upon the sale of the house, upon the death of wife, when the parties' minor child reaches 18 years of age, whichever event occurs first.

Article 9 provides that "husband shall pay and save wife harmless therefrom ..." and thereafter is a list of seven creditors including Barclay's American. The wife also is obligated to assume two debts. The parties have stipulated that the Barclay's American debt is the only debt in issue.

The stipulation further states that the debt to Barclay's American originated in 1979 as a joint obligation of plaintiff and defendant. The original debt was in the amount of $11,041.86 to be paid in 4 years with monthly installments of $238.00. It was secured by a second mortgage on the marital residence at 511 Franklin Street, Hamilton, Ohio. The purpose of the loan is not stated. The payments were made until the separation of the parties. Since that time defendant has made no payments to Barclay's American. To avoid foreclosure, plaintiff made payments to Barclay's American in the amount of $507.26. Approximately three and a half months after filing the present adversary proceeding, plaintiff refinanced the obligation owing to Barclay's American. The refinanced amount totals $2,448.00 with late charges and increased interest rates, and is payable in monthly installments of $72.00 over three years.

The parties have further stipulated that the defendant was employed as a part-time patrolman and a full-time security officer in 1982 with a gross income of $10,800.00. He had a gross income of $11,700.00 in 1983. Presently, the defendant is employed as a deputy for the Butler County Sheriff's Department with an annual salary of $15,672.00. The plaintiff is a secretary with the Ohio Casualty Insurance Company. Her gross income for 1982 was $14,000.00 and in 1983 it was $14,700.00. Her present salary is $15,750.00 annually.

Plaintiff contends that the debt to Barclay's American with respect to which the defendant agreed to hold plaintiff harmless in the Agreement is a nondischargeable debt under 11 U.S.C. § 523(a)(5). That statute provides in pertinent part:

> (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

> \* \* \* \* \* \*

> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement ...

> \* \* \* \* \* \*

The defendant argues first, that the debt is dischargeable because it arose from a property division and is not alimony. Second, he contends that the debt is dischargeable because 11 U.S.C. § 523(a)(5) only makes nondischargeable alimony, maintenance and support owed directly to a spouse or dependent.

■ We can dismiss defendant's second contention without extended discussion. In *In re Calhoun*, 715 F.2d 1103, 1107 (6th Cir.1983), the court considered the dischargeability of a debt coupled with a hold harmless clause in a separation agreement. After reviewing the history of § 523 the Court held "that payments in the nature of support need not be made directly to the spouse or dependent to be nondischargeable." The second contention is thus without merit.

The *Calhoun* case is the definitive case in this Circuit regarding dischargeability of marital debts pursuant to § 523(a)(5). It provides the starting point for our consideration of whether the debt, owed by plaintiff and defendant to Barclay's American and as to which defendant undertook to hold plaintiff harmless following their divorce, is dischargeable. The court in *Calhoun* restates the by now familiar proposition that the determination of whether a debt is "in the nature of alimony, maintenance, or support" is to be determined by federal bankruptcy law. Recognizing that state law should not be ignored in reaching a determination under the statute here in question, the court characterizes the proper role of state domestic relations law as to "provide a useful source of 'guidance'." It was the view of the court in *Calhoun* that in enacting the Bankruptcy Code, Congress had charged the Bankruptcy Courts with the fashioning of a federal bankruptcy common law of domestic relations, and it considered that an important factor in such law must necessarily be the "fresh start" concept which underlies the Bankruptcy Code. After setting out this rationale, the Court said that we must take into consideration the following elements in reaching a determination in a matter such as that now before us, beginning at p. 1109:

> We believe that the initial inquiry must be to ascertain whether the state court or the parties to the divorce intended to create an obligation to provide support through the assumption of the joint debts.

> \* \* \* \* \* \*

> If the Bankruptcy Court finds, as a threshold matter, that assumption of the debts was intended as support it must next inquire whether such assumption has the effect of providing the support necessary to insure that the daily needs of the former spouse and any children of the marriage are satisfied.

> \* \* \* \* \* \*

> The Bankruptcy Court should also look to the practical effect of the discharge of each loan upon the dependant spouse's ability to sustain daily needs.

> \* \* \* \* \* \*

> Having found that the loan assumption has the effect of providing necessary support, the Bankruptcy Court must finally determine that the amount of support represented by the assumption is not so excessive that it is manifestly unreasonable under traditional concepts of support. Such an excessive allowance is at odds with the fresh start concept underlying federal bankruptcy law.

> \* \* \* \* \* \*

> If at the time the debts were assumed, the assumption substantially exceeded a spouse's present pay, the amount of the assumption which exceeded that ability should not be characterized as in the nature of support.

Let us now apply these considerations to the case before us. The nature of the obligation assumed by defendant was that of the second mortgage on the parties' marital residence. In an earlier case we said that:

> Providing shelter for an ex-wife is clearly in the nature of alimony, support and maintenance of the former spouse. *In re Zimmer*, 27 B.R. 132 (Bankr.S.D.Ohio 1983).

We have also stated:

> Certainly one of the primary aspects of familial support is the obligation to provide shelter for a spouse and children. Defendant's assumption of the Midland Guardian debt was one method of insuring that plaintiff and the child would not be deprived of this security. Therefore we think that it can reasonably be inferred from the Separation Agreement that the debt assumption was intended by the parties to be a substitute for the support of the plaintiff and the parties' child which defendant had provided during the tenure of the marriage. *In re Smith*, No. 1–80–02717, Adv. File No. 1–80–0082, and –0083, (Bankr.S.D.Ohio August 24, 1981).

Taking into account that this marriage had lasted for ten years and that there was a child of the marriage in the custody of plaintiff, together with the fact that the obligation here in question was secured by a mortgage, we conclude that what was intended by the assumption of this obligation by defendant was the provision of support, so that the first point of inquiry suggested by the court in *Calhoun* is fulfilled. Indeed, these facts satisfy us that the next elements are also fulfilled. That is, the assumption of a debt secured by a mortgage on the residence inhabited by the ex-wife and child in her custody does have the effect of providing necessary support "to insure that the daily needs of the former spouse and any children of the marriage are satisfied."

Further, if defendant's obligation by reason of his assumption of the joint debt to Barclay's American were discharged, it is obvious that a substantial portion of the amount required by the Agreement to be paid by defendant to plaintiff as support of their child would have to be devoted to payment by plaintiff of this debt, and defendant would have no further obligation on the debt. The amount of support paid by defendant to plaintiff as child support, some $70.00 per month, is scarcely adequate to enable plaintiff to sustain the daily needs of a child, and certainly would not be adequate if she were required also to pay off the Barclay's American balance.

This leaves, then, for our final consideration the factor of whether the obligation to Barclay's American is "so excessive that it is manifestly unreasonable under traditional concepts of support." Taking into account that by his bankruptcy defendant has relieved himself of the necessity of paying some $8,000.00 in debt, that his current gross income is $15,672.00, and that there is no showing of demands upon him other than those resulting from his former marriage, we do not believe that the Barclay's American obligation will overburden him.

Accordingly, we find the issues in favor of plaintiff and hold that the defendant's obligation arising from the Barclay's American debt is nondischargeable.

The foregoing constitutes our findings of fact and conclusions of law.