**In re Richard Wayne BRAND, Debtor.**

**Sue BRAND, Plaintiff,**

**v.**

**Richard Wayne BRAND, Defendant.**

**Bankruptcy No. 89–06648.**
**Adv. No. 89–0546.**

United States Bankruptcy Court,
N.D. Alabama.

Oct. 27, 1989.

William S. Halsey, Jr., Anniston, Ala., for plaintiff.

Earl Underwood, Anniston, Ala., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS BY THE COURT

L. CHANDLER WATSON, Jr.,
Bankruptcy Judge.

*Introduction—*

The above-styled case is pending before the bankruptcy judges upon the voluntary petition of the debtor, Richard Wayne Brand, filed pursuant to title 11, chapter 7, United States Code, on May 9, 1989. The above-styled adversary proceeding was commenced in said case by the plaintiff, Sue Brand, who prays "that the Court except from discharge those debts listed above under the hold harmless provision of paragraph III of the above-referred to divorce decree and declare them to be nondischargeable." The debts listed include "Sear's," "J.C. Penny Company," "Discover Card," "Card Center," and "First Select VISA," with amounts listed for each which total $10,919.54. The plaintiff's contention was that the debtor's obligation to pay these debts amounts to alimony or support for her as the former spouse and are nondischargeable in this bankruptcy case by virtue of the exception to discharge set forth in 11 U.S.C. § 523(a)(5). The plaintiff proceeds upon the theory that the debtor's obligation to pay these debts pursuant to a "SEPARATION AGREEMENT" entered into by the parties must be enforced in order for her to be able to pay her debt obligations and pay for her ordinary living expenses, because of her joint liability to pay these debts. During the course of this proceeding, the plaintiff has conceded that she has no legal liability for payment of the debt owed to Sears, Roebuck and Company. The debtor maintains that his obligation under the agreement was part of a property settlement and did not constitute his agreement to pay alimony or support for the benefit of the plaintiff. This issue was tried to a conclusion before the undersigned bankruptcy judge on October 26, 1989, and taken as submitted.

*Findings of Fact—*

As reflected in paragraph 2(a) of the Court's trial order, the parties stipulated that the statement of the debts in paragraph "A." of the plaintiff's trial statement correctly sets forth the debts involved, which are (omitting "Sear's"):

| | |
|---|---|
| J.C. Penney Company | $1,100.00 |
| Discover Card | 2,912.55 |
| Card Center | 1,797.03 |
| First Select VISA | 2,907.05 |

At trial, the Court, at the request of the plaintiff, took judicial notice that the defendant's statement of affairs in this case showed his income for the year 1987 to have been $37,180.00.

Although plaintiff's Exhibit 1 is defective by being incomplete, a complete copy of the final decree of divorce and of the separation agreement which it adopts appears to be attached to the plaintiff's complaint, and the parties proceeded at trial as if a complete copy of both were before the Court—presumably, this being the intent of plaintiff's Exhibit 1.

Additionally, from the evidence, the Court finds the following facts:

1. The plaintiff and the debtor were husband and wife, residing together in the State of Georgia until the plaintiff was granted an absolute divorce from the debtor on or about September 18, 1987;

2. Up until then and for some considerable time thereafter, the plaintiff was employed at a department store in Carrollton, Georgia, earning an average gross pay of about $850.00 per month, and the debtor was a long-haul-freight truck driver who earned approximately $3,100.00 per month, while having on-the-road expenses of about $540.00 per month;

3. The plaintiff had two dependent children (but there is no evidence to indicate that these children were related to the debtor or that he had any obligation for their support);

4. The debtor spent most of his time away from home as required by his job, and the plaintiff's principal monthly expenses, aside from any food expense for her children, were food approximately $125.00, utilities approximately $272.00, a car payment of $210.00, and a house-mortgage payment of $907.70, plus various payments on numerous credit-card accounts;

5. The plaintiff and the debtor had their home built on land given to her by her father, she contributed $20,000.00 to the construction of the house, the remaining expense of construction was paid with the proceeds of the mortgage loan, the parties moved into the house in 1981, and she sold the house to a third party for $83,000.00 six months or so after the divorce;

6. The parties owed ten accounts for charges or cash advances made on store or bank credit cards, and they agreed that he would pay five and that she would pay the other five;

7. This agreement was incorporated into the parties' separation agreement, which the divorce court adopted in its decree of divorce;

8. The separation agreement also provided that the plaintiff would take her automobile, that the debtor would take his automobile, that the plaintiff would be responsible for the taxes and mortgage payments related to the house, and that the plaintiff made "no claim upon [the debtor] for payment of alimony.";

9. The monthly payments on the five credit accounts for which the plaintiff agreed to make payments totalled $412.00; and

10. At the time of the divorce, a brother of the plaintiff began making the house payments for her of $907.70 per month, and another brother had expressed a desire to purchase the house from the plaintiff and was expected to do so by her, but about March 1988, it was made known to the plaintiff that the brother who intended to purchase the house would not be able to do so and that the other brother would not be able to continue to make the mortgage payments for her.

*Conclusions by the Court—*

"Wife makes no claim upon husband for payment of alimony," which appears as the first sentence in Part VII of the parties' settlement agreement seems on its face to contradict the plaintiff's claim that the debtor's obligation to pay four of the accounts on which she had a joint liability amounted to a promise to pay alimony or support to her. The term "alimony" conveys the idea of payments by a person to a former spouse, for support of the former spouse, made periodically, and made pursuant to a decree of divorce. The terms "support," "support money," and "support payments" appear to have a broader mean-

ing and may refer to payments by a person for the support of that person's spouse, former spouse, children, or other relative and which are made pursuant to a decree of divorce, an interlocutory divorce-proceeding order, some other domestic-relations court order, or informally. In the present case, if any obligation of the debtor to provide support for the plaintiff survived the divorce, it could appropriately be termed "alimony" or "support." Thus, if such an obligation were stated in one part of the separation agreement, a recitation in a different part of the agreement that the plaintiff made no claim upon the debtor "for payment of alimony" would not defeat or impinge upon such obligation. This separation agreement is ambiguous as to whether it contains an agreement for the debtor to pay alimony or support for the benefit of the plaintiff, as opposed to paying the same "to" the plaintiff. If the obligation exists, there is no sound reason for any distinction to be made between whether the alimony or support was to be paid "for" or whether it was to be paid "to" the plaintiff, in the context of the exception to discharge set forth in 11 U.S.C. § 523(a)(5).

Taking the separation agreement in the light of evidence, the Court concludes that the debtor's obligation to make the payments upon the four credit accounts for which the plaintiff was jointly liable amounted to an agreement to pay alimony or support for her benefit. This conclusion is not foreclosed by the language in the agreement that she made no claim upon the debtor "for payment of alimony." In this context, that ill-chosen language meant that no claim was being made upon the debtor for periodic payments of money to the plaintiff for her support, and it was made in light of the other provisions in the agreement for the debtor to make the monthly installment payments on the four credit-card accounts which he agreed to pay. The former does not contradict the latter but is stated in light of the debtor's agreement to make the payments on those accounts.

The arithmetic of the figures relating to the plaintiff's monthly living expenses, ex-cluding entirely the enormous house-mortgage payment, and her income shows that she has insufficient income for her living expenses and the payments on the five credit-card accounts which she agreed to pay. Thus, if the obligation to make payments on the four other credit-card accounts were thrust upon her by the debtor's discharge in bankruptcy, it is apparent that her monthly-budget deficit would be greatly multiplied and that her ability to support and maintain herself would be substantially and materially impaired and put in disarray.

In the setting of the plaintiff's living expenses and financial commitments, she was unable to support herself without the debtor's agreement to pay the four accounts in question. Whether the parties ever analyzed their agreement as the Court has been required to do is inconsequential, for they both must have understood that the debtor's obligation in this regard was to provide for the plaintiff's support by relieving her from the obligation to pay the four accounts which are in question here.

This determination presents an out-of-the-ordinary question as to how the plaintiff's rights are to be enforced. She is not entitled to a money judgment for the recovery of the sum of the four accounts, for she has not paid the same, and the complaint does not demand a money judgment. Consequently, a judgment for the plaintiff will be be entered which adjudges the obligation of the debtor to the plaintiff to pay these four accounts to be nondischargeable in this bankruptcy case. To enforce this adjudication, it will be ordered that the collection of these debts by the creditors is excepted from the injunction provided in this Court's order of discharge of the debtor in this case, which, otherwise, would forbid the creditors from pursuing collection of the accounts from the the debtor.