In re Edward Earl ROBINSON, Debtor.

**Charlotte ROBINSON,**
**Plaintiff–Appellant,**

v.

**Edward Earl ROBINSON,**
**Defendant–Appellee.**

No. 88–K–1795.
Bankruptcy No. 88 B 3315 E.
Adv. No. 88–J–516.

United States District Court,
D. Colorado.

April 24, 1990.

Jorge E. Castillo, Denver, Colo., for Charlotte Robinson.

Milnor H. Senior, III, Denver, Colo., for Edward Earl Robinson.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

This bankruptcy appeal presents an interesting twist to the common problem of characterizing a marital debt as support or a property settlement for the purposes of dischargeability under § 523(a)(5).[1] In this case, Charlotte Robinson, the ex-wife of debtor Edward Earl Robinson, claimed that Mr. Robinson's obligation to make payments on a note secured by a second deed of trust on the marital home and to hold her harmless from this obligation were in the nature of support and therefore nondischargeable. Unlike the majority of cases in which this question has arisen, however, Mrs. Robinson refinanced the second mortgage after Mr. Robinson stopped making the payments and declared bankruptcy. The question here is whether the bankruptcy court was correct in holding that Mrs. Robinson's refinancing of the debt mandates its discharge, since the original debt upon which Mr. Robinson was liable was extinguished by the refinancing.

## I. *Facts.*

The facts in this case are stipulated. Mr. and Mrs. Robinson were married for over eighteen years. They were divorced on September 12, 1983. On that date, the divorce court entered permanent orders regarding the division of marital assets and the provision of support to Mrs. Robinson. The court awarded Mrs. Robinson the family home, which was subject to a first and second deed of trust upon which both parties were both liable. It ordered Mrs. Robinson make payments and hold Mr. Robinson harmless on the first deed of trust, held by Capitol Federal. It ordered Mr. Robinson to make payments on the second deed of trust, held by Finance America.[2] The September 12 permanent orders were modified by a court order dated October 11, 1983, in which the court further ordered Mr. Robinson to hold harmless Mrs. Robinson on the second deed of trust.

Mr. Robinson made the payments on the second deed of trust until he filed for bankruptcy in March, 1988. Mrs. Robinson was forced to make the payments on the loan or face foreclosure of the home, since she was still liable on the note. To lower her payments, on or about May 16, 1988, Mrs. Robinson refinanced the loan through the Commerce Bank of Aurora. The refinancing reduced the monthly payments on the debt from $360.67 to $220.56 and the interest rate on the note from 19.4 percent to 12.46 percent. The term of the note was effectively extended seven years.

On July 8, 1988, Mrs. Robinson filed an action challenging the dischargeability of Mr. Robinson's obligations on the second deed of trust under 11 U.S.C. § 523(a)(5). She alleged that these obligations were in the nature of support, rather than a property settlement, and therefore were nondischargeable. On July 22, 1988, she amended her complaint to reflect that the Finance America loan had been refinanced through

---

**1.** I have previously ruled in another matter involving the same parties. In *Robinson v. Robinson (In re Robinson,* 114 B.R. 716 (D.Colo.1990), I reversed the bankruptcy court's determination and held that Mr. Robinson could avoid a judicial lien arising from his failure to pay a portion of his property settlement to his ex-wife because

it attached to and impaired his homestead exemption.

**2.** The Finance America loan was then transferred to, or Finance America was acquired by, Chrysler First Industrial Bank.

Commerce Bank of Aurora. Mr. Robinson responded by denying that his duty to pay the second deed of trust was in the nature of support, instead characterizing it as a property settlement. He further alleged that the release of the original second mortgage mandated the conclusion that there was no remaining debt to discharge.

On October 25, 1988, the bankruptcy court held a hearing on Mrs. Robinson's complaint. Mrs. Robinson testified as to her financial circumstances at the time of the divorce. At the conclusion of the hearing, the bankruptcy court entered its findings of fact and conclusions of law. First, the court found that Mr. Robinson's obligation to pay and hold Mrs. Robinson harmless on the second deed of trust was in the nature of support, maintenance or alimony. *See* R.Vol. II at 39–40, 41. The court further reasoned, however, that this determination was not dispositive of the case. Because Mrs. Robinson had refinanced the debt secured by the second deed of trust, thereby paying off and releasing Mr. Robinson from liability under the original note to Finance America, the court held there was no debt to except from discharge. Accordingly, it entered judgment for Mr. Robinson. Mrs. Robinson appeals.

## II. *Merits.*

This appeal raises two issues. First, I must determine whether the district court was clearly erroneous in finding that Mr. Robinson's obligation under the permanent orders relating to the second deed of trust was in the nature of support, maintenance or alimony. *See Goin v. Rives (In re Goin)*, 808 F.2d 1391, 1393 (10th Cir.1987) (characterizing this issue as one of fact and applying the clearly erroneous standard of review). Second, if I affirm the court's conclusion that it was in the nature of support, I must consider whether the court was correct in holding that Mrs. Robinson's refinancing of the debt extinguished Mr. Robinson's obligations under the permanent orders, and therefore there was no debt to be discharged. Since this issue is legal in nature, review is *de novo*. *See Bartmann v. Maverick Tube Corp.*, 853 F.2d 1540, 1543 (10th Cir.1988).

■ Resolution of the first issue is governed by § 523(a)(5) of the Bankruptcy Code. This section provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of record, determination made in accordance with state or territorial law by a governmental unit, or property settlement agreement. . . .

11 U.S.C. § 523(a)(5). Whether a debt is excepted from discharge under § 523(a)(5) is an issue to be determined under federal bankruptcy law. *Sylvester v. Sylvester*, 865 F.2d 1164, 1166 (10th Cir.1989). Although Tenth Circuit cases dealing with § 523(a)(5) have all involved settlement agreements reached by the parties and not court adjudication of their respective rights and responsibilities, *see, e.g., id.* at 1166; *In re Goin*, 808 F.2d at 1392; *Yeates v. Yeates (In re Yeates)*, 807 F.2d 874, 878 (10th Cir.1986), the same considerations come into play. *Cf. Swiczkowski v. Neagley (In re Swiczkowski)*, 84 B.R. 487, 490 (Bankr.N.D.Ohio 1988) (inquiry is whether the parties' or the state court's objective was to create a support obligation). Hence, the central question is the court's intent when it entered the permanent orders, " 'viewed in the crucible of surrounding circumstances.' " *In re Yeates*, 807 F.2d at 878.

■ In this case, although an argument can be made the Mr. Robinson's obligations relating to the second deed of trust were part of a property settlement, there is sufficient evidence to support the bankruptcy court's conclusion that it was in the nature of alimony, maintenance or support. At the time of the divorce, Mrs. Robinson clearly could not service the debt on both the first and second deeds of trust. Mrs. Robinson testified that she had no source of income, other than the support that Mr.

Robinson had been paying, because the gift shop she purchased and in which she worked was not then profitable. R.Vol. II at 19, 21–22. Aside from her work in the family drycleaning business awarded to Mr. Robinson, Mrs. Robinson had no other work experience. *Id.* at 18. Finally, the court's order directing Mr. Robinson to make these payments also included an obligation for spousal maintenance. *Compare Sweeny v. Sweeny (In re Sweeny)*, 99 B.R. 192, 196 (Bankr.D.Conn.1989) (debtor's hold-harmless obligation on second mortgage construed as one for support, where circumstances clearly indicated that ex-wife could not make mortgage payments and debtor's obligation was intended to protect her from risk of losing home). Since there are no "cogent reasons in the record" to disturb the bankruptcy court's holding that Mr. Robinson's duty to make payments on the second deed of trust and hold Mrs. Robinson harmless thereon were in the nature of alimony, maintenance or support, *see In re Goin*, 808 F.2d at 1393, I affirm the court's ruling on this issue.

■ The second issue, whether Mrs. Robinson's refinancing of the debt affects the dischargeability of Mr. Robinson's obligations under the permanent orders, is more troublesome. The bankruptcy court held, without citation to authority, that the extinguishment of the original debt under the second deed of trust through refinancing meant that there was no debt left for the court to discharge. Further, neither party has cited any cases either supporting or contradicting this proposition. In my opinion, the bankruptcy court overlooked the distinction between the debt itself, which Mr. Robinson was required to pay to Finance America, and his obligation to hold Mrs. Robinson harmless under the permanent orders. Given that these are two sep-

arate and distinct commitments, the release of Mr. Robinson from liability under the original note and deed of trust does not affect his obligation under the permanent orders.

The leading case on this issue is *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103 (6th Cir.1983). In *Calhoun*, the debtor and his ex-wife entered into a settlement agreement whereby the debtor agreed to assume five debts jointly incurred during the marriage and to hold his ex-wife harmless for their payment. *Id.* at 1105. This agreement was subsequently incorporated into a divorce decree dissolving the marriage. When the debtor declared bankruptcy, his ex-wife moved that these debts be declared nondischargeable under § 523(a)(5) of the Bankruptcy Code.

The *Calhoun* court rejected the notion that, because these obligations were not payable directly to the former spouse, they were outside the scope of § 523(a)(5). Noting that courts have "uniformly found hold harmless clauses to create nondischargeable obligations," *id.* at 1107, the court ruled that "payments in the nature of support need not be made directly to the spouse or dependant to be nondischargeable." *Id.* The essential question, the court held, is "whether the state court or the parties to the divorce *intended* to create an obligation to provide support through the assumption of joint debts." *Id.* at 1109. In a footnote, however, the court noted that it was considering the debtor's continuing obligation to hold his spouse harmless on past marital debts and that the dischargeability of past payments for which the debtor is in arrears "requires an analysis distinct from consideration of whether the continuing obligation to hold harmless may be discharged." *Id.* n. 9.[3]

---

**3.** Although there is some disagreement as to what the *Calhoun* court meant by this distinction, many courts have held that § 523(a)(5) broadly applies to a debtor's past due support obligations. *See, e.g., In re Swiczkowski*, 84 B.R. at 491.

Also note that a number of courts have disagreed with the second portion of *Calhoun* in which the court held that, once an obligation is found to be one for support, the court must then

consider whether "the amount of support represented by the assumption is not so excessive that it is manifestly unreasonable under traditional concepts of support." *Id.* at 1110. The Tenth Circuit has rejected this element of the *Calhoun* analysis, holding that it has no basis in the legislative history of § 523. *See Sylvester v. Sylvester*, 865 F.2d at 1166. I suggest that the appropriate remedy in such circumstances is to

Since *Calhoun,* numerous courts have treated a debtor's obligation to hold his spouse harmless on a premarital debt in the same manner as any other obligation in a settlement agreement. Such obligations will be discharged only if the court determines that they are in the nature of a property settlement, and not alimony, maintenance or support. *See, e.g., Troup v. Troup (In re Troup),* 730 F.2d 464, 466 (6th Cir.1984); *Williams v. Williams (In re Williams),* 703 F.2d 1055, 1057 (8th Cir. 1983); *Brand v. Brand (In re Brand),* 108 B.R. 319 (Bankr.N.D.Ala.1989); *Calisoff v. Calisoff (In re Calisoff),* 92 B.R. 346, 353 (Bankr.N.D.Ill.1988). That such obligations fall within the scope of § 523(a)(5) is made clear in the legislative history to this section. *See Clark v. Clark (In re Clark),* 105 B.R. 753, 759 (Bankr.S.D.Ga. 1989). Although no court appears to have directly considered the issue, in several cases, it is clear that the restructuring, refinance or discharge of the underlying obligation (through bankruptcy or otherwise) does not affect the debtor's continuing hold-harmless obligation.

The case most closely on point is *Wright v. Wright (In re Wright),* 51 B.R. 630 (Bankr.S.D.Ohio 1985). In *Wright,* as in this case, the dissolution decree between the debtor and his wife awarded the family home to the wife. She was also obligated to assume two debts. The decree required the debtor husband to assume and hold his wife harmless for seven other debts; one of these included a second mortgage on the family home. *See id.* at 631. The debtor thereafter failed to make the payments on the second mortgage. To avoid foreclosure, the wife made payments on the loan. After filing an action to have the debt declared nondischargeable, she refinanced the loan.[4] Despite the wife's refinancing of the loan, the court ruled that the debtor's obligation to hold her harmless on the second mortgage was a nondischargeable debt in the nature of support. *Id.* at 633.

In addition to *In re Wright,* other courts have held that other post-divorce changes in the structure of the obligation underlying the hold-harmless agreement do not affect the dischargeability analysis. *See, e.g., Keeran v. Keeran (In re Keeran),* 112 B.R. 881 (Bankr.N.D.Ohio 1990) (ex-wife entered into reaffirmation agreement on debt upon which only ex-husband was formerly liable; ex-husband's hold-harmless obligation on debt held nondischargeable); *Swiczkowski v. Neagley (In re Swiczkowski),* 84 B.R. 487 (Bankr.N.D.Ohio 1988) (debtor's obligation to pay indebtedness due on automobile awarded to ex-wife in divorce was nondischargeable, even though automobile had been repossessed). Finally, as noted in *Kircher v. Lord (In re Lord),* 93 B.R. 678, 681 (Bankr.E.D.Mo.1988), § 523(a)(5) "does not render nondischargeable a debt to a third party itself, but only the debtor's obligation to hold his or her ex-spouse harmless from the payment of this debt." Thus, the court held that the debtor was not discharged from his hold-harmless obligations to his ex-wife, even though the debts underlying the hold-harmless obligations were discharged. *Id.* at 682. In light of these cases, the bankruptcy court erred in concluding that Mr. Robinson's hold-harmless obligation to his ex-wife was eliminated by release of the underlying debt upon refinancing. Therefore, I reverse and ORDER the Clerk of the Court to enter judgment for Mrs. Robinson.

---

seek equitable relief in the state court which entered the support order.

**4.** The opinion does not reveal whether this was through the original lender or another lender.