In re John Allen VANN, Debtor.

Andrew L. QUIAT, Esq., and the Law Offices of Andrew L. Quiat, a Professional Corporation, Appellants,

v.

Andrea S. BERGER, Trustee, Appellee.

Civ. A. No. 91–K–1060.
Bankruptcy No. 88 B 11859 J.

United States District Court,
D. Colorado.

Feb. 5, 1992.

---

Paul G. Quinn, and Charles F. Kaiser, for Berger.

Christian C. Onsager, and Colin C. Deihl, for Quiat.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

In this bankruptcy appeal, Andrew L. Quiat and the Law Offices of Andrew L. Quiat (collectively, Quiat) contest the bankruptcy court's June 4, 1991 order requiring Quiat to disgorge approximately $125,000 of attorney fees paid by the debtor, John Allen Vann. Quiat argues that the bankruptcy court erred in ruling: (1) under § 329 of the Bankruptcy Code Quiat must forfeit all compensation because of potential and actual conflicts of interest, (2) the debtor and the debtor's wife's purported waivers of conflicts of interest were not effective, (3) Quiat's compensation exceeded the reasonable value of his services, (4) Quiat's disclosure statement as to compensation was inadequate under Bankr.R. 2016(b), (5) the inadequacy of the disclosure statement made determination of the reasonableness of Quiat's fees impossible, and (6) Quiat was required to make reimbursement of the fees to the bankruptcy trustee, and not the debtor.

In addition, Quiat has also filed a combined motion to withdraw the reference and motion for new trial. He argues that withdrawal of the reference is appropriate because the bankruptcy court indicated its lack of impartiality when recusing from ruling on Quiat's motion for stay pending appeal. He contends that a new trial is warranted because of newly available evidence, due to the debtor's ·waiver of the attorney-client privilege by filing a malpractice action against Quiat.

### I. *Facts.*

On September 2, 1988, debtor John Allen Vann filed for Chapter 7 bankruptcy protection. Vann was first represented by attorney Nancy Miller, who assisted him in filing his initial schedules of assets. Vann did not disclose to Miller his interests in the Mid Continent Management Group, the Stapo Company and a limited partnership known as Executive Hangars 1.[1] This led the trustee, Andrea S. Berger (Trustee), and several creditors to initiate adversary litigation against Vann in early 1989 objecting to his discharge. On March 10, 1989, when Vann finally disclosed these assets to Ms. Miller, she amended his schedules to reflect them.

Although Quiat did not formally enter his appearance on behalf of Vann until 1989, his relationship with Mr. and Mrs. Vann was longstanding. Vann, Quiat, and a third party were general partners in the Stapo Company, which in turn was the general partner of the Mid Continent Management Group. Quiat was also a limited partner in Mid Continent. In 1987, Quiat had assisted Vann in his attempt to transfer Vann's interest in Mid Continent to his children. Quiat also represented Mrs. Vann in the Vann's dissolution action, filed one day before Vann's petition in bankruptcy. (The Vann's later reconciled in October, 1988.)

Quiat's first appearance came on June 5, 1989, when he filed a motion to dismiss an adversary proceeding brought by the Trustee on behalf of Vann. On June 14, 1989, he appeared as counsel of record for Mr. and Mrs. Vann at a hearing on the Trustee and creditors' objections to certain exemptions claimed by Vann. On June 16, 1989, Quiat filed an "Application for Employment of Counsel and Disclosure of Compensation." On July 26, 1989, after the Trustee objected to Quiat's application, Quiat filed a second "Disclosure of Com-

---

1. Mid Continent's primary asset was unencumbered real property, including a parcel at one time worth approximately $88,000. Stapo was a general partner in Mid Continent. Stapo's sole asset was its limited interest in 10 percent of the proceeds (less commissions) of the sale of Mid Continent's property. Executive Hangars No. 1 was a Colorado limited partnership whose asset was an airplane hangar.

pensation." Quiat withdrew his application for appointment as Vann's attorney on July 25, 1989 on the grounds that court approval of his employment was unnecessary under § 329. Quiat's June 16 and subsequent July 26 disclosures revealed Quiat's relationship to Vann through Mid Continent, his representation of Mrs. Vann, and his agreement with Vann to be paid from Vann's deferred compensation funds and from the proceeds from the sale of Vann's interest in Executive Hangars 1.

On June 24, 1989, after several months of negotiations between Vann, the Trustee and creditors, Vann proposed a detailed agreement in settlement of the adversary litigation. The agreement provided, among other things, that Vann would pay five percent of the estate's administrative expenses, all of the Trustee's adversary litigation would be dismissed without compensation to the Trustee, and Vann's debts would be held nondischargeable, but without monetary judgment against him. According to the testimony of Ms. Miller, the Trustee and the creditors were willing to accept the settlement "except for some concerns of the Trustee about [its] tax consequences." The proposed agreement fell through, however, when Vann withdrew settlement authority from Ms. Miller in August 1989. Miller eventually withdrew from representing Vann.

The adversary litigation against Vann continued through the fall of 1989. During that time, Quiat represented Vann in the bankruptcy court and also assisted Vann in selling his limited partnership interest in Executive Hangars No. 1. Quiat retained a majority of the sales proceeds in partial payment of his fees. In March 1990, Quiat was listed as a substantive witness in an adversary proceeding involving Mid Continent. As a result, on April 20, 1990, Quiat moved for leave to withdraw. The bankruptcy court granted the motion on April 23, 1990 and further ordered Quiat to file a statement of compensation in accordance with § 329.

On April 27, 1990, Vann, his creditors and the Trustee entered into a global settlement agreement approved by the bankruptcy court. The terms of this agreement were different than those proposed in the settlement contemplated in June 1989. Vann was required to pay all of the Trustee's administrative expenses, he was assessed $250,000 to be paid into a settlement fund in consideration of the dismissal of the adversary proceedings, all of his debts were held nondischargeable and a one million dollar judgment was entered against him. Further, Vann was required to maintain a life insurance policy designating the Trustee as beneficiary for one million dollars. There was also an assignment of Vann's wages, and time limits were placed on his debt repayment plan.

On May 23, 1990, in compliance with the bankruptcy court's April 23 order, Quiat filed a Disclosure and Statement of Compensation, detailing the services rendered on behalf of Vann, his wife, and their children since 1989 and the source and amount of Vann's payments. Several creditors and the Trustee objected to Quiat's disclosure. Hearings on this issue were held in October and December of 1990 and in March and April of 1991. On June 4, 1991, the bankruptcy court issued its memorandum opinion and order, requiring Quiat to pay over to the Trustee approximately $125,000 in fees received by Quiat over the past two years. *See In re Vann*, 128 B.R. 285 (Bankr.D.Colo.1991).

II. *Issues.*

A. Merits of Bankruptcy Court's June 4 Disgorgement Order.

Quiat first takes issue with the bankruptcy court's statement that "at least insofar as where a conflict of interest is shown when an attorney's fees are questioned under § 329, this court adopts a *per se* rule that a debtor's attorney must forfeit all fees." *Id.* at 287. Quiat argues that this interpretation is an unfounded extension of the statutory language of § 329 and the procedural rules implementing it.

Section 329 of the Bankruptcy Code provides:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under

this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

(1) the estate, if the property transferred—

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12 or 13 of this title; or

(2) the entity that made such payment.

11 U.S.C. § 329.[2]

 Two rules of Bankruptcy Procedure implement this section. Rule 2016 governs applications by professionals, including the debtor's attorney, for interim or final compensation from the estate and details the information required on the application. Bankr.R. 2016(a). In addition, it requires every attorney for the debtor, whether or not he or she requests compensation, to file a disclosure statement identifying any fee arrangements and compensation paid or promised to the attorney. Bankr.R. 2016(b). It also contains a requirement that the disclosure be supplemented should any additional fee arrangements or pay-

ments be made. *Id.* Rule 2017, in turn, specifies the procedure by which payments to the debtor's attorney, both before and after commencement of the case, are reviewed under § 329. In both situations, the court may order that such payments be returned if they are "excessive."

 One final statutory provision is relevant in this context: § 330 of the Code. That section addresses compensation paid to officers of the court, which by definition includes attorneys employed by the debtor governed by § 329. 11 U.S.C. § 330(a). Under it, such parties may receive "reasonable compensation for actual, necessary services rendered ... based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services" in nonbankruptcy cases, plus "actual, necessary expenses." *Id.* In essence, § 330 supplies the standard by which the court determines whether payments are "excessive" under § 329 and Rule 2017. *See* 8 *Collier on Bankruptcy* ¶ 2017.03 at 2017–6 (L. King 15th ed. 1991) ("The review performed by the court pursuant to Rule 2017 will apply to the determination of the value of services rendered the same tests that would be applied in review of an application for compensation pursuant to Rule 2016 and section 330 of the Code.")

 None of these statutory provisions or rules expressly mentions the effect of conflicts of interest in the review process governing fees paid to the debtor's attorney. The determinative factor is only whether the payments were "excessive."[3]

---

**2.** I have several times considered the requirements placed on attorneys for debtors under § 329 of the Bankruptcy Code. In *Land v. First National Bank of Alamos (In re Land)*, 116 B.R. 798 (D.Colo.1990), *aff'd*, 943 F.2d 1265 (10th Cir.1991), I summarized the provisions of the Code dealing with the employment of professionals. I outlined the specific requirements placed on the attorney for the debtor to file a disclosure of all arrangements for compensation under § 329(a) and Bankr.R. 2016(b) and I noted that "section 329 was enacted in response to the concern that '[p]ayments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by

the debtor's attorney, and should be subject to careful scrutiny.'" *Id.* at 804 (footnote and citation omitted); *see also Nucor, Inc. v. Deutsche Credit Corp. (In re Nucor, Inc.)*, 113 B.R. 22, 25 n. 3 (D.Colo.1990) (in which I pointed out that court approval of an attorney's employment by debtor out-of-possession is not required).

**3.** In contrast, under § 328 of the Code, the court may disallow entirely compensation for services rendered by an attorney employed by the trustee or a debtor-in-possession "if, at any time during such professional person's employment under section 327 or 1103 under this title, such a professional person is not a disinterested person, or represents or holds an interest adverse

Quiat contends that the bankruptcy court's adoption of a "per se" rule denying fees under § 329 when there is a conflict of interest is an unwarranted expansion of the statutory language and incorrect as a matter of law. Relying on *In re Devers*, 12 B.R. 140 (D.D.C.1980), he argues that ethical conflicts are relevant to the fee determination only insofar as they reduce the value of the services the attorney provides, thereby making them "excessive."

The attorney in *In re Devers* was employed as counsel for American Financial Services (AFS), a corporation providing debt counseling and consolidation services, and was an officer and director of the corporation. When employees of AFS encountered a client in need of bankruptcy counsel, they referred the client to the attorney, who maintained his office in AFS' facility. Thus, in addition to being AFS's counsel and vice-president, the attorney represented a number of consumer debtors in their bankruptcy cases. Based on this conflict, the bankruptcy court sua sponte found that the attorney's unethical conduct rendered his services to his clients valueless under § 329 and directed the attorney to disgorge all fees. *See In re Smith*, 5 B.R. 92 (Bankr.D.D.C.1980).

On appeal, although the district court agreed with the bankruptcy court that ethical violations were relevant to the fee determination, it held that the bankruptcy court was without statutory authority to order disgorgement based on ethical violations alone. *See In re Devers*, 12 B.R. at 142. It remanded to the bankruptcy court for "specific findings that the unethical conduct lessened the value of the lawyer's services to his clients," *id.*, which the bankruptcy court then attempted to do, *see In re Smith*, 24 B.R. 266 (Bankr.D.D.C.1982). The case again was appealed, and on subsequent review, the *Devers* court further specified the analysis required:

> If unethical conduct on the part of the Appellant diminished the value of his services to a client, the Bankruptcy Court should specifically set forth (1) whether

to the interest of the estate with respect to the matter on which such professional person is employed." 11 U.S.C. § 328(c). Quiat argues

unethical conduct was a factor in determining the amount of the fee award: (2) if so, what was the nature of the conduct; (3) the amount by which the alleged unethical conduct has reduced the value of Appellant's services; and (4) the Court's basis for reducing the value of Appellant's services by such amount.

*In re Devers*, 33 B.R. 793, 799 (D.D.C.), *appeal dismissed*, 729 F.2d 863 (D.C.Cir. 1983).

*In re Devers* represents one approach to determining allowable attorney fees in the face of conflicts of interest. Contrary to Quiat's suggestion, however, the bankruptcy court was not *required* to employ the *Devers* analysis. Looking at the decision which provides the basis for disgorgement of fees for conflicts of interest in bankruptcy cases, *Woods v. City National Bank & Trust Co.*, 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820 (1941), it is clear that the bankruptcy court has greater discretion in the disallowance of fees than *In re Devers* suggests.

*Woods* involved a case under Chapter X of the Bankruptcy Act in which the indenture trustee, a bondholder's committee and the committee's counsel requested fees and expenses. The bankruptcy trustee objected because counsel to the committee was also counsel to the indenture trustee and other interested parties. *See id.* at 267, 61 S.Ct. at 496. Under section 221 of the Act, the court was authorized to review all fees and expenses in connection with the reorganization proceeding for "reasonableness. The court emphasized that

> 'reasonable compensation for services rendered' necessarily implies loyal and disinterested service in the interest of those for whom the claimant purported to act. Where a claimant, who represented members of the investing public, was serving more than one master or was subject to conflicting interests, he should be denied compensation. It is no answer to say that fraud or unfairness

that the "disinterested person" standard of §§ 327 and 328(c) should not be imported into § 329.

were not shown to have resulted. The principle enunciated by Chief Justice Taft in a case involving a contract to split fees in violation of the bankruptcy rules, is apposite here: "What is struck at in the refusal to enforce contracts of this kind is not only actual evil results but their tendency to evil in other cases." Furthermore, the incidence of a particular conflict of interest can seldom be measured with any degree of certainty. The bankruptcy court need not speculate as to whether the result of the conflict was to delay action where speed was essential, to close the record of past transactions where publicity and investigation were needed, to compromise claims by inattention where vigilant assertion was necessary, or otherwise to dilute the undivided loyalty owed to those whom the claimant purported to represent. Where an actual conflict of interest exists, no more need be shown in this type of case to support a denial of compensation.

*Id.* at 268, 61 S.Ct. at 497. The Court's holding additionally rested on the fact that the claimants in *Woods* were fiduciaries. *Id.* at 268–69, 61 S.Ct. at 497–98.

The rule of *Woods v. City National Bank,* that an actual or potential conflict of interest will justify total disallowance of fees, has been applied in many cases under the Bankruptcy Code. However, in recognition of the unique context of bankruptcy reorganizations, the sometimes harsh results of the rule have been softened. The rule's development is explained in *In re Watson Seafood & Poultry Co.,* 40 B.R. 436, 439–440 (Bankr.E.D.N.C.1984):

A review of the cases leads to the conclusion that once a conflict of interest is shown, attorney's fees should be entirely denied, even though the services rendered had intrinsic value and brought a benefit to the bankrupt estate. The doctrine has been applied with great severity. All fees were denied in the following cases in which debtor's counsel represented an interest adverse to the estate....

The United States Supreme Court has said, "Where an actual conflict of interest exists, no more need be shown in this type of case to support a denial of compensation." There is also a line of cases decided under the Bankruptcy Act of 1898 beginning with *Silbiger v. Prudence Bonds Corporation,* 180 F.2d 917 (2d Cir.1950), *cert. denied,* 340 U.S. 813, 71 S.Ct. 40, 95 L.Ed. 597 (1950) which holds that the rule denying all compensation should be relaxed somewhat in corporate reorganization cases. Citing the need for flexibility in dealing with conflicts in reorganization cases, the Second Circuit Court of Appeals held "Woods recognition of the general rule, however, does not strike us as a mandatory requirement that reorganization courts woodenly must deny compensation in every case of conflict of interest, regardless of facts." Several courts have followed the *Silbiger* line of cases and allowed partial fees where conflicts were present in Bankruptcy Cases.

Thus, the general rule is that counsel's fees are denied when a conflict of interest is present, but the bankruptcy court has the ability to deviate from that rule in those cases in which "the need for attorney discipline is outweighed by the equities of the case." *Id.* at 440; *see also In re Global Marine, Inc.,* 108 B.R. 998, 1006 (Bankr. S.D.Tex.1987), *appeal dismissed,* 108 B.R. 1007 (S.D.Tex.1987); *In re Ochoa,* 74 B.R. 191, 197 (Bankr.N.D.N.Y.1987); *In re GHR Energy Corp.,* 60 B.R. 52, 68 (Bankr. S.D.Tex.1985).

Most of the cases in which the above rule has been applied have dealt with attorneys and other professionals appointed under § 327 of the Code, whose fees are expressly subject to disgorgement under § 328 of the Code for conflicts. *See, e.g., In re Martin,* 817 F.2d 175, 182–83 (1st Cir.1987); *In re Republic Fin. Co.,* 128 B.R. 793, 800 (Bankr.N.D.Okla.1991) (denying all compensation for services); *In re Cody,* 122 B.R. 520, 526–27 (Bankr.N.D.Ohio 1990); *In re Global Marine, Inc.,* 108 B.R. at 1004–06 (holding that court may deny or reduce fees based on ethical violations, but finding none); *In re Ochoa,* 74 B.R. at 197; *In re Chou–Chen Chem., Inc.,* 31 B.R. 842

(Bankr.W.D.Ky.1983). There are several, however, which have concerned counsel for a debtor under § 329, who are not subject to § 328. *See, e.g., Barton v. Chrysler (In re Paine),* 14 B.R. 272 (W.D.Mich.1981) (denying fees in toto to attorney for involuntary debtor under former Act); *In re McNar, Inc.,* 116 B.R. 746, 750 (Bankr. S.D.Cal.1990), *aff'd in pertinent part,* 133 B.R. 561 (Bankr.9th Cir.1991) (opinion in Westlaw); *In re Watson Seafood,* 40 B.R. at 440, 443 (denying all fees to counsel from time trustee was appointed to act on behalf of estate); *In re Whitman,* 51 B.R. 502 (Bankr.D.Mass.1985) (permitting only small portion of fees for services rendered to Chapter 13 debtor); *In re Damon,* 40 B.R. 367 (Bankr.S.D.N.Y.1984); *In re Mattocks,* 15 B.R. 379 (Bankr.E.D.N.Y.1981).

There is no reason to suggest the rationale of *Woods* does not apply in fee determinations under § 329. Although employment under § 329 as attorney for a debtor is not subject to the bankruptcy court's approval, the attorney is nevertheless a fiduciary and an officer of the court. *See* 11 U.S.C. § 330(a); *Barr v. Weber (In re Carousel Candy Co.),* 38 B.R. 927 (Bankr. E.D.N.Y.1984); *In re Mattocks,* 15 B.R. at 386 ("attorneys for debtors in bankruptcy proceedings are 'officers of the court and fiduciaries' ... where attorneys fail to live up to their obligations as such officers and fiduciaries all fees received by them should be required to be returned, with interest"). The attorney is subject to the same fiduciary standards mentioned in *Woods:*

> A fiduciary ... may not perfect his claim to compensation by insisting that, although he served his several masters equally well or that his primary loyalty was not weakened by the pull of his secondary one. Only strict adherence to these equitable principles can keep the standard of conduct for fiduciaries "at a level higher than that trodden by the crowd."

312 U.S. at 269, 61 S.Ct. at 497. That courts must carefully scrutinize fee arrangements between the debtor and his counsel is further reflected in the legislative history of § 329. *See In re Land,* 116 B.R. at 804.

Thus, the bankruptcy court did not err in holding that Quita's conflicts of interest, standing alone, could justify the denial of all fees. The district court's discretion under *Woods* to deny fees is extremely broad and has been upheld by every circuit. *See In re Republic Fin. Co.,* 128 B.R. at 800. While the court could have exercised its discretion to permit some award had it found that "the need for attorney discipline [was] outweighed by the equities of the case," it did not abuse its discretion in failing to do so.[4] And it clearly was not required to follow the guidelines advocated in *In re Devers* to put a dollar value on the amount by which an attorney's unethical conduct depletes the value of his services. Not only is this contrary to the Supreme Court's view in *Woods* that the effect of particular conflicts of interest cannot be "measured with any degree of certainty," *see* 312 U.S. at 268, 61 S.Ct. at 497, it puts the burden on the court to prove the worth of the claimed fees when that burden is rightfully the attorney's. *Id.; see also In re Gold Seal Prods. Co.,* 128 B.R. 822, 828 (N.D.Ala.1991); *In re Gianulias,* 111 B.R. 867, 868 (E.D.Cal. 1989).

Quiat claims, however, that the bankruptcy court erred in its analysis of the purported conflicts and in holding that Mr. and Mrs. Vann had not effectively waived these conflicts. The bankruptcy court addressed this issue in depth in its opinion. *See* 128 B.R. at 287–91. It made detailed findings that Quiat had both potential and actual conflicts of interest. Quiat was both an attorney for the debtor and a business partner through his ownership interests in Mid Continent and the Stapo Company. In connection with these busi-

---

**4.** To the extent the bankruptcy court's opinion suggests that it *must* withhold all fees and has no discretion to consider the equities of the case, that ruling is not correct. *See In re Watson Seafood,* 40 B.R. at 439–440. It is not reversible error, however, since the court alternatively held that Quiat's fees could be withheld because of inadequate fee disclosures and because the benefits of his service did not outweigh the effect of the conflicts of interest.

nesses, Quiat assisted with one transaction during the bankruptcy proceedings in which he ostensibly acted as attorney for Vann, represented himself, and acted as a fiduciary for other partners in the business, including one who was a creditor. In another transaction, he attempted to transfer the debtor's interest in the Stapo Company to the debtor's children. Later in the proceedings, Quiat's contract attorney, then representing the Stapo company, took the position that the transfer, though handled by Quiat, was ineffective and that the interests became estate property. In addition, Quiat represented the debtor's wife during divorce proceedings and advised her of the consequences that the bankruptcy would have on any separation agreement. He likewise entered an appearance and rendered advice on behalf of the Vanns' children.

■ Although Quiat argues that none of these interests were actually adverse, I disagree. *See Kendavis Indus. Int'l, Inc.*, 91 B.R. 742, 754 (Bankr. N.D.Tex.1988) (attorney cannot simultaneously represent partnership and individual partners). At a minimum, Quiat's multiple representations created the appearance of impropriety, which in itself is sufficient justification to withhold fees under *Woods. See* 312 U.S. at 268, 61 S.Ct. at 497; *Kendavis*, 91 B.R. at 754 ("The concept of *potential* conflicts is a contradiction in terms. Once there is a conflict, it is *actual—not potential*). His contention that Vann and his wife effectively waived these conflicts is of little assistance; the purported waivers covered only a portion of the conflicts evident in this case.[5] Quiat overlooks the conflict created by his ownership interest in Mid Continent and the Stapo Company and his corresponding duties to the other participants in these ventures (including one who was a creditor), as well as the conflicts involving the Vann's children.

dren. Moreover, several courts have held that ethical violations under Canon 9 of the Code of Professional Responsibility cannot be waived. *See, e.g., In re Global Marine, Inc.*, 108 B.R. at 1005–06. In sum, the bankruptcy court's observation that "Quiat was like a phantom, entering and leaving cases at will," 128 B.R. at 290, and its findings of actual and potential conflicts are supported by the record and are not clearly erroneous.

■ Quiat next asserts that the bankruptcy court erred in holding, alternatively, that the inadequacy of his disclosures under § 329 and Bankr.R. 2016 supported the full denial of his fees. The court found that Quiat had failed to disclose two payments and only revealed nine others, totalling $124,103.14, when ordered to do so. It noted that two of the disclosed payments were from assets which, at the time received, were the subject of unresolved adversary litigation. In addition, the bankruptcy court found that the disclosures were "totally insufficient [in detail] for this Court to make a determination as to the reasonableness of fees and costs." 128 B.R. at 293. Quiat argues that he was not required to comply with the disclosure requirements of Bankr.R. 2016(b) because he was employed post-petition and because the court did not otherwise order him to file a disclosure.

Bankruptcy Rule 2016(b) provides that the disclosure statement be filed "within 15 days after the order for relief, or at another time as the court may direct." Bankr.R. 2016(b). The rule further provides that "[a] supplemental statement shall be filed within 15 days after any payment or agreement not previously disclosed." *Id.* The Advisory Committee notes to the 1987 Amendments to this rule indicate that the requirement of an early filing, before the

---

**5.** Quiat also argues that there is no potential conflict created by his representation of Vann in the bankruptcy proceedings and Mrs. Vann in the divorce proceedings because any settlement between them would be nondischargeable. This is not necessarily true. Under § 523(a)(5) of the Code, a debt to a former spouse is nondischargeable only if it can be characterized as

alimony, maintenance or support. 11 U.S.C. § 523(a)(5). Property settlements are dischargeable. *See Will v. Miller & Saxton, P.C. (In re Will)*, 116 B.R. 254 (D.Colo.1990); *Robinson v. Robinson (In re Robinson)*, 113 B.R. 687 (D.Colo.1990), *aff'd*, 921 F.2d 252 (10th Cir. 1990).

first meeting of creditors, is to "assist the parties in conducting the examination of the debtor." Thus, the clear intent of the rule is early disclosure. Although it was drafted on the assumption that the debtor's attorney would be employed before filing, it should be interpreted to require timely disclosure when an attorney accepts employment or compensation after the order for relief is entered. *Cf. In re Fricker*, 131 B.R. 932, 941 (Bankr.E.D.Pa.1991) (fee application in Chapter 13 case must be filed "prior to confirmation of the plan and *immediately* after counsel's receipt of compensation" exceeding customary amount).

Even assuming that Quiat could be excused from filing a disclosure within a given time period because of the ambiguity in Rule 2016(b), he *voluntarily* filed his first disclosure in July, 1989. The express, unambiguous terms of Rule 2016(b) require an attorney to update the disclosure within 15 days if at any time additional payments are received or the compensation agreement is altered. Therefore, Quiat was subject to the continuing duty to report all transfers of fees to the court, which he failed to do. In this case, Quiat's shortcomings in his disclosures were particularly troublesome, since he accepted several payments that came from assets which were the subject of a contested adversary proceeding of which he had knowledge. Under abundant case law, noncompliance under Rule 2016(b), even if unintentional or inadvertent, will support the total denial of fees. *See, e.g., In re Crimson Inv., N.V.*, 109 B.R. 397, 401 (D.Ariz.1989); *In re Maui 14K, Ltd.*, 133 B.R. 657 (Bankr.D.Haw.1991); *In re Kero-Sun, Inc.*, 58 B.R. 770 (Bankr.D.Conn. 1986).

The court also found that the detail in Quiat's May 23, 1990 disclosure was deficient, without making any specific findings to this effect. Looking at the disclosure, however, I agree that it is nearly impossible to determine how much time was charged for any particular activity. Instead, the "Services Rendered" section of the disclosure is structured by general topic (e.g., Separation Proceedings, Exemption Hearing, Turnover Complaint). Each heading contains a multi-paragraph narrative describing counsel's general activities in that area. The narrative is followed by a table giving dates and hours expended. There is no explanation of what particular tasks were accomplished on any date or any correlation between hours billed and tasks.

"Counsel's fee revelations must be direct and comprehensive. Coy or incomplete disclosures which leave the court to ferret out pertinent information from other sources are not sufficient." *In re Saturley*, 131 B.R. 509, 517 (D.Me.1991). The grouping of many items in a single description is not permissible. *See In re Watson Seafood*, 40 B.R. at 443. The fee disclosure must, at minimum, " 'specify for each attorney the date, the hours expended, and the nature of the work done.' " *In re Cena's Fine Furniture, Inc.*, 109 B.R. 575, 583 (E.D.N.Y. 1990). Quiat's May 23 disclosure does not meet these standards. Therefore, I affirm the bankruptcy court's denial of fees on this basis as well.

Finally, Quiat argues that the bankruptcy court erred in requiring Quiat to pay over the disallowed fees to the Trustee, and not to the Debtor. Under § 329(b), the court may order the return of fees to the entity that made the payment, or to the estate if the property transferred would have been property of the estate. 11 U.S.C. § 329(b). The Trustee asserts in her brief that

> [s]ince the 1990 settlement provides that Mr. Vann is responsible for 100% of all allowed claims, the fees were properly ordered paid to the Trustee. Of course, the record before this Court does not fully reflect whether administrative expenses or allowed claims have been fully satisfied. Therefore, the Trustee is willing to either stipulate to return of the disgorged fees to Mr. Vann to the extent that there is any excess in the estate after all creditor claims and expenses have been satisfied, or to a limited remand to the Bankruptcy Court to determine whether there are as yet unsatisfied claims or expenses.

(Appellee's Answer Br. at 30–31).

Since it is not clear in the record or in the bankruptcy court's order that all of the

disgorged fees would have been property of the estate and the Trustee has not actually stipulated as to any excess fees payable to Vann, I must order a limited remand for further proceedings to determine whether the disgorged fees were properly returned to the Trustee. In all other respects, I affirm the bankruptcy court's ruling requiring Quiat to disgorge all fees.

### B. Motion for Withdrawal of the Reference and New Trial.

On October 8, 1991, Quiat filed a combined motion to withdraw the reference and motion for new trial. These motions are moot.

In his motion for new trial under Rule 60(b)(2), Quiat argued that there is newly available evidence which could have affected the outcome of the proceedings below. After the bankruptcy court issued its ruling, Quiat was named as a defendant in a legal malpractice suit brought by Vann. By filing suit against his attorney, Quiat contends that Vann waived the attorney-client privilege for all purposes, and Quiat is now free to reveal formerly confidential information about Vann's litigation decisions relative to the value of Quiat's services and the Vanns' purported waiver of conflicts.

■ The motion to withdraw the reference is premised on 28 U.S.C. § 157(d), which permits withdraw of the reference for "cause shown." Here, Quiat argues that cause is shown by the bankruptcy court's bias, demonstrated by the judge's recusal on Quiat's motion for stay pending appeal because he did not believe he could hear the motion in an "unbiased manner." (See Order of Recusal, June 18, 1991). Quiat contends that the court would likewise be biased in ruling on his motion for new trial, and that withdrawal of the reference is necessary to permit the district court to rule on the motion.

■ First, motions for new trial are properly directed to the trial judge, not the appellate court. Despite his recusal from the motion for stay, the bankruptcy judge should be given the opportunity to make a ruling, or to refer the matter to another bankruptcy judge. There is no inherent reason why the motion for new trial must be heard in the district court.

■ Second, the new evidence sought to be introduced is not material. The denial of fees in this case can be upheld on any one of three bases: conflicts of interest, failure to disclose, and inadequate disclosures. The bulk of the evidence Quiat seeks to introduce is relevant only if the court follows the approach of *In re Devers* to determine the value of the attorney's services weighed against the conflicts of interest. Other evidence apparently relates to the Vann's purported waivers of certain conflicts of interest. As noted above, however, even accepting the waivers as valid, they covered only a small portion of the many conflicts involved.

The order requiring Quiat to disgorge attorney fees paid by the debtor is AFFIRMED in part. The case is REMANDED for additional proceedings for the limited purpose of determining whether disgorged fees were entirely property of the estate and properly disgorged to the Trustee. The motion for withdrawal of the reference and for new trial are DENIED as moot.