In re Russell MILLS and Leslie D. Mills, Debtors.

Bankruptcy No. 94–00996–PHX–CGC.

United States Bankruptcy Court, D. Arizona.

June 30, 1994.

Joseph J. Hessinger, J. Murray Zeigler, Hessinger & Associates, Phoenix, AZ, for debtors.

## ORDER

CHARLES G. CASE, II, Bankruptcy Judge.

### I. INTRODUCTION

This case involves the adequacy of a Chapter 7 Debtor's attorney's fee disclosures, the reasonableness of the fees charged and the question whether a Chapter 7 Debtor's pre-petition obligation to make post-petition installment payments for pre-petition legal work is discharged. All of these matters are before the court pursuant to an order to show cause directed to debtors' counsel, Hessinger & Associates ("Hessinger"), issued upon the application of the United States Trustee.

### II. FACTS

Russell Mills works in the construction industry. Periodically, work shrinks and he is laid off, creating financial strain. Approximately one year prior to filing of this bankruptcy, he contacted Duane Varbel & Associates ("Varbel") for purposes of filing a bankruptcy, paid that firm approximately $200.00 but never received any representation.[1] Thereafter, several months later, he saw advertisements for Hessinger and contacted that firm. He was somewhat concerned when he realized that Hessinger was located in the same offices as Varbel had been but nevertheless proceeded to engage the firm.[2]

Mr. and Mrs. Mills first went to Hessinger's office in January, 1994. There, they met with "Desiree", a receptionist. She reviewed their financial condition, advised them that Chapter 13 was inappropriate for their needs and that they should file Chapter 7, and set their fee at $1,500.00, payable at $125.00 per month for twelve months, plus the filing fee of $160.00. She advised them that making these fee payments would help their post-bankruptcy credit and failure to make the payments would hurt their credit. She also advised them on matters relating to child custody and payments due a former spouse. Another assistant in the office, named Annette, helped Mr. and Mrs. Mills fill out their Petition and Schedules. They meet briefly with an attorney during this exercise, apparently only because Annette was having difficulty using the computer software and needed assistance.

Their next contact with an attorney was a telephone call from a John Bruno a few days prior to the Section 341 meeting, asking if they could meet a few minutes prior to the meeting. They did so and Mr. Bruno represented them at the Meeting. They can recall no further contact with any attorney in connection with this case.

Mr. and Mrs. Mills have made payments on the fee, not to Hessinger, but to an entity named "CFFM." Not knowing who or what this entity is, Mrs. Mills called the telephone number listed on certain CFFM documents to inquire. To her surprise, she discovered that the number given was the residence of an unrelated party. The only other clue was a hand-written telephone number on a demand notice received from CFFM; Mrs. Mills called that number and discovered that it was an equipment rental company.

---

1. Varbel refused to file a bankruptcy because the Mr. and Mrs. Mills fell behind on their payments. When Varbel demanded approximately $700.00, Mr. and Mrs. Mills could not pay and they dropped the idea of bankruptcy.

2. Under the terms of an agreement not yet fully disclosed to the Court, Hessinger became successor in interest to Varbel sometime in late 1993. Duane Varbel, principal of Varbel, is presently suspended from the practice of law by the Supreme Court of Arizona and is awaiting disposition of a recommendation that he be disbarred.

Mr. and Mrs. Mills contacted Hessinger and asked who CFFM is and why they are to make their payments to it; no one at Hessinger has been able to tell them.

As noted, the representation received to date has been limited, to say the least. Mr. Mills knows that Hessinger did contact the lienholder on the car for reaffirmation purposes. He is not aware whether they have contacted any other creditors. Mr. Mills has contacted the Arizona Department of Revenue and three other creditors, provided them with copies of the Petition and the page from the Schedules on which their claim is listed. Although he believes that the service he has received from Hessinger is better than the service he received from Varbel (which is not much of a standard since Varbel's service was nonexistent), he is not entirely satisfied with the representation he has received.

The file reflects that this is an uncomplicated Chapter 7 case. The Debtors own no real property, have one secured creditor (automobile loan which has been reaffirmed), owe tax claims of about $9,000.00, and unsecured claims of about $24,000.00. There have been no contested matters or adversary proceedings. The Trustee has filed a Report of No Distribution.

At the end of the hearing, the United States Trustee requested an order prohibiting Hessinger from further collection action, pending ruling on the Order to Show Cause. In response, Mr. Zeigler testified that no further collection efforts were underway or would be undertaken with regard to these particular Debtors. Based on that representation, no order was entered. However, subsequently, in a May 9, 1994 letter to the Court, Mr. Zeigler stated the following:

> Prior to the time of the hearing I had been informed that Hessinger & Associates was no longer pursuing collection of attorneys' fees from its clients until such time as the issues raised by the United States Trustee regarding dischargeability of pre-petition attorneys' fees had been resolved. Believing this to be the case, I stated at the hearing that the collectors employed by Hessinger & Associates were no longer actively pursuing collections from Hessinger clients.

> I have recently discovered that the statements that I made at the time of the hearing are not true. Hessinger & Associates, through it's [sic] collectors, is continuing to pursue clients for fees. Collection efforts are being made on both current and delinquent accounts. I do *not* know if collection efforts are being made on those specific cases where an order to Show Cause was issued.

Hessinger has not filed any further notice of whether collection procedures have ceased regarding these Debtors and no additional order has been sought by the United States Trustee.

Hessinger sent J. Murray Zeigler to represent its interests at the hearing. Mr. Zeigler testified that he has no personal knowledge of the business side of the firm, stating that such information is not shared with "staff attorneys" such as himself. However, Mr. Zeigler has heard of CFFM and believes them to be one of the 12 to 15 collectors that Hessinger employs to collect receivables. As far as Zeigler knows, Hessinger does not sell or factor its notes, but retains all rights and obligations. He testified that he understood that if a client calls Hessinger with a problem with collection activities by CFFM, or any of the other collectors, the call is routed to a legal assistant who then refers the Debtor back to the representative of the collector.

The fee agreement was admitted in evidence. The initial Rule 2016(b) Statement made no reference to the agreement, but did disclose the amount of the fee and its deferred nature; it did not disclose the amount of the monthly payment or the role of CFFM. It further indicated that the agreed scope of representation included all proceedings relative to the case, including contested matters and adversary proceedings.

An Amended Statement has now been filed with a copy of the agreement attached. Now we learn that the scope of representation does *not* include contested matters or adversary proceedings and that CFFM receives a fee of 20% of all amounts collected from the Debtors. Notwithstanding Rule 2016(b) clear language to the contrary, this "sharing arrangement" remained a secret until Hes-

singer was forced to disclose as a result of the Order to Show Cause.

## III. DISCUSSION

### A. Issues Raised by the United States Trustee.

Against these facts, The United States Trustee has raised the following issues:

1) Whether Hessinger has adequately disclosed its fee arrangement with these Debtors and arrangements, if any, for sharing of fees;

2) Whether the fee charged and agreed to be paid is reasonable and whether the agreement should be voided;

3) Whether the post-petition installments due on this pre-petition fee agreement have been discharged.

The Court rules in favor of the U.S. Trustee on the first two issues and against her on the third, and finds, in addition, that the firm has further failed to comply with Bankruptcy Rule 2016 by not filing continuing supplemental statements disclosing payments as made.

### B. The Nature of the Hessinger Fee Arrangement.

Rather than billing a specific rate per hour, so that the total fee depends on the amount of time spent performing work for the client, Hessinger has agreed to provide legal services in connection with this Chapter 7 bankruptcy for a fixed sum. This type of agreement is known as a "general retainer." L. Brickman and J. Klein, *The Use of Advance Fee Attorney Retainer Agreements in Bankruptcy: Another Special Law for Lawyers?* 43 S.C.L.Rev. 1037 (1992). This type of fee arrangement is typical in Chapter 7 cases. Normally, however, the entire fee is paid pre-petition, and disclosed as such. In this case, in contrast, the payments are to be made primarily post-petition. Regardless of their timing, such payments are subject to

disclosure and review for reasonableness under Section 329.[3]

### C. Disclosure, Reasonableness and Disgorgement: A Balance of Interests.

■ The bedrock of the attorney compensation scheme is the Code's significant disclosure requirements. Code Section 329[4] requires that the debtor's attorney file a disclosure statement setting forth a) the fees paid **or agreed to be paid** and b) the source of the compensation. *In re Yermakov,* 718 F.2d 1465 (9th Cir.1983). Section 329 is expressly applicable even if the attorney does not apply for compensation under the Code. In other words, regardless of who pays, the attorney must disclose the terms of any prior payment and of any future fee agreement, including whether the attorney has been paid in connection with the case at the time of filing the petition or expects to be paid anything after the petition is filed. The statute specifically deals with *both* past payments and future agreements.

■ The second prong of Section 329 is the Court's oversight over the fee arrangement so disclosed. The court has an affirmative duty to review for reasonableness fees disclosed in the agreement. *Yermakov,* 718 F.2d at 1470, n. 8. The court has broad discretion then to allow or disallow fees, notwithstanding the terms of the fee agreement. If it finds the fees contemplated or paid "exceed the reasonable value" of the services rendered or to be rendered, the court may "*cancel any such agreement,* or order the return of any such payment to the extent excessive," under Section 329. The attorney has the burden of proof to establish that any compensation he has received is reasonable. Section 329(b); *In re Olen,* 15 B.R. 750, 753 (Bankr.E.D.Mich.1981).

The disclosure and disgorgement process protects both creditors and debtors. The debtor generally pays the firm from money that would otherwise be a part of the estate, available for distribution to creditors.[5] In

---

**3.** The reasonableness inquiry is necessary because of the Court's finding that the pre-petition obligations are not discharged. See Section III(F), *infra.*

**4.** Section 329 is limited to any fee agreement made less than one year before filing the bankruptcy petition.

**5.** In this case, the protection of the Debtors, not of creditors, is implicated, since payments were

that scenario, the debtor has no incentive to protect assets for the estate: "It matters very little to a bankrupt whether his attorney fee is large or small, since it will be paid out of the assets which, in any event, would normally be consumed in distribution." Committee on the Judiciary, House of Representatives, Report on H.R. 2833 (1963); *Olen,* 15 B.R. 750. Similarly, the attorney, before filing, represents and promotes the interests of the debtor, as opposed to the broader interests of the bankruptcy estate and the creditors. *See In re Office Products of America,* 136 B.R. 964, 971 (Bankr.W.D.Tex. 1992). Vulnerable would-be debtors, who are often in desperate straits, may need protection against their attorneys, who themselves may be tempted to put their own financial interests ahead of those of the debtors. Compensation for the debtor's attorney is therefore subject to close scrutiny in order to "preserve the creditor-protection provisions of the bankruptcy laws" and because of "serious potential for overreaching by the debtor's attorney" in the bankruptcy context. S.Rep. No. 95–989, 95th Cong., 2d. Sess., U.S.Code Cong. & Admin.News 1978, 5787. These statutory protections can work only if 1) the attorney complies and accurately discloses any payment or agreement, and 2) the Court then rigorously exercises oversight, either sua sponte or on the application of the trustee, the United States Trustee, or any other party in interest.

In this case, the firm originally disclosed the fee charged; however, it did not disclose the way in which part of the amount due is to be paid post-petition. It also failed to disclose that the fee was to be shared with another party, here, the collector. Finally, it inaccurately disclosed the scope of its representation of the Debtors.

■ There are substantial penalties for patently inadequate disclosure such as occurred here. Specifically, attorney's fees may be completely denied in order to deter attorneys from general nonobservance of the Bankruptcy Code, although this sanction should not be imposed where circumstances demonstrate its imposition would be overly harsh. *In re BOH! Ristorante, Inc.,* 99 B.R.

to come from the post-petition earnings of the

971 (9th Cir. BAP 1989). BOH! points out that cases authorizing complete denial of fees usually involve payments from the estate; however, there is authority disallowing fees where payments are from the debtor. *See, e.g., In re Piper,* 52 B.R. 600 (Bankr. W.D.Mo.1985) (ordering return of all fees to debtors where attorney failed to comply with bankruptcy laws).

### D. Compensation for Pre-petition Services.

Compensation paid by a debtor who contemplates filing a petition in bankruptcy covers payment only for **services required to be rendered up to the filing of the petition in bankruptcy and for attending the meeting of creditors.** *Olen,* 15 B.R. at 752. A distinction between pre-petition and post-petition services was recognized in the Bankruptcy Act of 1898. Under the 1898 Act, a creditor could petition the court to reexamine fees paid in anticipation of bankruptcy, but for services to be performed in the future. As under the Code, the court could order that fees exceeding a reasonable amount be paid to the estate. Brickman and Klein at 7. The 1898 Act did not allow, however, the courts to re-examine fees paid to compensate counsel for work done in anticipation of bankruptcy. This omission was redressed with a 1968 amendment, which gave courts authority to examine 1) attorney fees charged to the debtor for work performed in anticipation of bankruptcy and before filing and 2) to reexamine, on its own motion, both past and future services. *Id.*

The Code, which replaced the Act in 1978, preserved a distinction between pre- and post-petition services. "The attorney for the debtor is entitled to compensation for analyzing the debtor's financial condition/rendering advice and assistance to the debtor in determining whether to file a petition in bankruptcy; the actual preparation and filing of the petition, schedules of assets and liabilities, and the statement of affairs and representing the debtor at the Section 341 meeting of creditors." *Olen,* 15 B.R. at 752, quoting *In re Kross,* 96 F. 816 (S.D.N.Y.1899); *In re*

Debtor.

*J.J. Bradley & Co.,* 6 B.R. 529 (Bankr. E.D.N.Y.1980).[6] There is sound reason for limiting pre-petition payments to pre-petition services:

> Although grounds for creditor postpetition actions may exist, counsel cannot predict whether a creditor will actually institute any action, nor can he accurately evaluate the work necessary to resolve it. For this reason, cases have consistently held that the compensation paid by a debtor who contemplates filing a petition in bankruptcy covers payment only for service required to be rendered up to the filing of the petition in bankruptcy and for attending the section 341 meeting of creditors [citations omitted]. Any other approach would, in effect, be a signal to attorneys that they could charge whatever the traffic would bear with impunity. Limiting pre-petition payment to services rendered or to be rendered in connection with the filing of the petition and attendance of the first meeting of creditors removes the temptation by an attorney to load his time sheets with time devoted to the resolution of post-petition problems that might conceivably arise but never materialize.

*Olen,* 15 B.R. at 754.

Here, Hessinger charges a flat rate, so that the "temptation to load time sheets" is not at issue. However, the other concern *Olen* expresses, that of charging fees disproportionate to the work performed, as the result of "whatever the traffic would bear," is on point. The firm has charged fees that appear to be unjustifiable, except in the context of the firm's target market—the unknowledgeable, vulnerable—and cash poor—debtor.

On the face of it, Hessinger's fee appears to be unreasonable for the services provided for a case of this limited complexity. The firm has yet to establish that its fees are consistent with those charged in the Phoenix metropolitan area for similar services, nor has it shown any other reasonable basis, such as time devoted to the Debtors' affairs, to justify its charges.[7] Further, the quality of the representation has been very marginal at best. The record suggests a firm significantly more focused on its bottom line than on its clients' interests.

### E. Additional Disclosure Requirements of Rule 2016.

■ Debtors' attorneys must disclose payments each time received. Through Rule 2016, fees paid by the debtor may be reviewed for reasonableness each time a payment is made. Rule 2016(b), states as follows:

> Every attorney for a debtor, *whether or not the attorney applies for compensation,* shall file and transmit to the United States trustee *within 15 days after the order for relief,* or at another time as the court may direct, the statement required by § 329 of the Code.... A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after *any payment* not previously disclosed.

(emphasis added.) The focus is on the actual payment, not the agreement to make a payment. Thus, the previous disclosure of the agreement does not suffice as the disclosure of the payment.

The purpose of Rule 2016(b) is to give the U.S. Trustee the information needed to determine whether to request appropriate relief based on excessive fees under Section 329 or, if the payment comes from the estate, under Section 330; Advisory Committee Note (1991); this provision applies, by its own terms, even when the attorney does not file an application for compensation; a mo-

---

**6.** While the cases do not discuss why the meeting of creditors, which occurs post-petition, is considered a pre-petition service for purposes of compensation, it is surely because this is the one event, known to be inevitable at the time of filing assuming the case proceeds in the ordinary course, mandatory for the debtor and which requires counsel.

**7.** The Code does not disapprove arrangements other than that of hourly billing; however, flat-fee arrangements may raise additional ethical questions, in light of the prohibition against non-refundable retainers. *See In re Cooperman,* 83 N.Y.2d 465, 611 N.Y.S.2d 465, 633 N.E.2d 1069 (1994) (holding non-refundable retainers prohibited by Code of Professional Responsibility, applying provisions materially the same as Arizona's).

**410**

tion for determination of excessive fees may be triggered by disclosure of the agreement or by making of payments, contemporaneous or subsequent. In this case, the attorneys have failed to file Rule 2016(b) statements corresponding to each post-petition payment, as required.

### F. Effect of Discharge on Agreement to Pay Post-petition for Pre-petition Services.

 Finally, this case raises the issue whether a "zero down" arrangement is permissible under the Code and Rules, where the installments are due after the petition is filed, even if fully disclosed and fully reasonable.[8] The discussion of this issue has been left to last so that the discharge argument can be viewed in the context of the highly regulated environment of debtors' attorney's fees.

Hessinger argues that the Debtors' obligations under such an arrangement should not be discharged. It points out the widespread nature of such fee agreements, attaching to its pleadings copies of Rule 2016(b) statements filed by eight other lawyers in this district disclosing post-petition payments for pre-petition fees in Chapter 7 cases. It is easy to see the attraction of such an arrangement for destitute debtors who, if faced with the need to make a large one-time payment to hire a lawyer, may conclude, ironically, that they are too poor to file bankruptcy. The issue, however, is not whether it is attractive but whether it is legal.

Although the Bankruptcy Code and Rules attempt to accommodate, through a complex statutory and regulatory framework, the potentially competing interests of creditors, the debtor, and the debtor's attorney, they do not deal coherently with the post-petition installment issue. Further, there is no attempt to reconcile the regulatory provisions of Section 329 and Rules 2016 and 2017, which, taken together, suggest that a post-petition installment plan (with full and complete disclosure) is allowed by the Code, with the broad reach of the discharge as set forth in Section 727(b) and the lack of any specific exception to discharge in Section 523(a). The two sets of statutes appear to be irreconcilable; the one thoroughly regulates agreements which contemplate post-petition payments and gives the Court the authority to "cancel" such agreements if appropriate (with the corresponding implication that, in the absence of such "cancellation", the agreement remains in force); the other arguably discharges the obligations contained in such agreement and, with Section 524, prohibits the creditor, here the lawyer, from seeking to enforce it, *no matter how competent the lawyer nor reasonable the fee*, on a post-petition basis.

Although the discharge argument has been used to attack the "zero down" concept by the United States Trustee[9], by the press[10] and by other courts[11], the real potential evil represented by this case, and the others like it, is the poor quality of representation and the unreasonable amount of the fee. The disclosure requirements imposed on counsel, if followed, and the oversight responsibilities given to the United States Trustee and the Court, if consistently and rigorously exercised, should provide adequate protection to the public and to vulnerable debtors from poor representation and unreasonable fees, regardless of the timing of the payments made or to be made. Further, the concept of a debtor being able to gain access to bankruptcy relief by paying counsel over time is

---

**8.** Although the United States Trustee's office argues in this case, and in the four companion cases heard and considered contemporaneously, that the fee charged is unreasonable, "reasonableness" becomes irrelevant if it prevails on its discharge argument since the effect would be to wipe out the obligation regardless of its nature.

**9.** In addition to this case, the United States Trustee has sought and obtained Orders to Show Cause in four other cases before this Court and similar numbers in front of the other six bankruptcy judges in this district.

**10.** Jennefer Pittman, *Bankruptcy Barons; No–Money–Down Practices of Firm Raise Ethical Questions*, Vol. 107, No. 79 L.A. Daily Journal, April 26, 1994, at 1.

**11.** *In re Hessinger & Associates*, 165 B.R. 657 (Bankr.N.D.Cal.1994).

consistent with underlying policies of the Bankruptcy Code.[12]

In Chapter 7, generally claims that arise before the order for relief are discharged. Section 727(b); *Ohio v. Kovacs*, 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985). A "claim" under the Code is a right to payment, no matter whether matured or unmatured, contingent or non-contingent, liquidated or unliquidated. Section 101(5). The portion of a pre-petition retainer that is both earned and paid in full pre-petition, while arising before the order for relief, does not give rise to claim because the payment has already been made. Further, that payment is not property of the estate because the debtor no longer has any legal or equitable interest in that property. *In re Mondie Forge Co.*, 154 B.R. 232, 237 (Bankr.N.D. Ohio 1993). *But see In re Lilliston*, 127 B.R. 119, 121 (Bankr.D.Md.1991) (holding that a debtor retains an equitable interest in the retainer on the petition date, so that the pre-petition retainer constitutes property of the estate). On the other hand, where, as here, there is an agreement that provides for the debtor to make **post-petition payment** for pre-petition services, the analysis is quite different.[13]

Post-petition payment of pre-petition attorneys' fees raises difficult practical and ethical questions. At first blush, it appears that the firm is prohibited from collecting by the debtor's discharge. Where a creditor seeks to enforce a personal obligation of the debtors based on a pre-petition contract, the debt is dischargeable. Section 727(b). Minimally competent representation of a debtor includes an explanation by counsel of the fresh start which lies at the heart of bankruptcy and is, after all, for consumer debtors the primary reason for filing a bankruptcy petition. *See, e.g., In re Webber*, 674 F.2d 796, 798 (9th Cir.1982), *cert. den., Credithrift of America, Inc. v. United States*, 459 U.S. 1086, 103 S.Ct. 567, 74 L.Ed.2d 931 (1982). The discharge operates as a permanent injunction against action to collect, recover on or offset against the pre-petition debt. *See* Section 524(a)(2). The exceptions to discharge, found in Section 523(a), do not include attorneys' fees for preparing and filing the bankruptcy.[14] The United States Trustee suggests that discharging this pre-petition fee agreement is part of that fresh start.

The prohibition against post-petition payment for pre-petition fees is not, however, so clear-cut as the United States Trustee has suggested. Section 329(a), as noted above, clearly and specifically requires disclosure both of payments already made and any agreement for payments to be made. Section 329(b) provides the remedy if the disclosures in Section 329(a) demonstrate either an unreasonable payment already made or an unreasonable agreement for fees to be made: in the first case, the court may order disgorgement and in the second case, the court may cancel the agreement. Rule 2017(b) is devoted in its entirety to implementing the "examination" of debtor's post-petition payments to or fee agreements with his lawyer called for under Section 329(b).[15]

The "cancellation" provisions of Section 329(b) are meaningless if Congress

---

**12.** The availability of this type of fee arrangement may allow debtors who otherwise would have to proceed pro se to engage counsel. Further, the payment of fees postpetition does not diminish the estate, as the Chapter 7 debtors are free to hire their own counsel to represent them in personal benefit matters, which is then compensable through debtors' post-petition wages and exempt property.

**13.** The Court is not aware of any published opinion that analyzes the precise issue in question here, other than *In re Hessinger*, 165 B.R. 657 (Bankr.N.D.Cal.1994). The Court in that case had no difficulty concluding the obligations in the pre-petition agreement are discharged. This Court respectfully disagrees.

**14.** Without doubt, unpaid prepetition attorneys fees unrelated to the bankruptcy are within the scope of the discharge and are not regulated by Section 329.

**15.** Another Rule that contemplates post-petition payment of pre-petition fees is Rule 1006. This Rule requires the filing fee be paid in full before the debtor may pay an attorney or any other person who renders services to the debtor in connection with the case. The Advisory Committee Note (1983) to Rule 1006 explains that the rule codifies *In re Latham*, 271 F. 538 (N.D.N.Y. 1921) and *In re Darr*, 232 F. 415 (D.Cal.1916), each of which expresses outrage over and forbids the practice of paying debtor's counsel before the filing fee is paid in full.

intended the obligations to be automatically discharged. Although it is well-established that exceptions to discharge should be narrowly construed to preserve the debtor's "fresh start," *Martin v. Fidelity & Deposit Co. (In re Martin)*, 161 B.R. 672, 677 (9th Cir. BAP1993), citing *Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915), it does not follow that the discharge provisions should be read to obliterate the purpose of a free-standing section in the same statutory scheme. As the Supreme Court has said, "statutory construction is a holistic endeavor." *United Sav. Ass'n v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988). The goal is to harmonize conflicting statutes, not to render one of them meaningless. *See Watt v. Alaska*, 451 U.S. 259, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981) (even apparently conflicting statutes must be read to give effect to each if such can be done by preserving their sense and purpose); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984) (where two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.)

The application of these principles to this situation leads to the conclusion that fee arrangements that are subject to the disclosure, disgorgement and cancellation provisions of the Code are not discharged in a Chapter 7 case. *See In re Dennis*, 164 B.R. 318 (Bankr.D.Ariz.1994) (Baum, J.) (while discharge was raised by United States Trustee in a case with very similar facts, the Court decided the issue based upon Section 329 factors). In short, it does not make sense to apply the meat cleaver of Section 727(b) to such agreements when the scalpel of Section 329(b) was designed for that purpose. Congress has specifically and carefully legislated a scheme of disclosure and oversight that should not be lightly disregarded and this Court will not do so.

## IV. CONCLUSION

The Court concludes, in light of Section 329, that Section 727(b) does not discharge an individual debtor's post-petition obligation under a pre-petition fee agreement related to services provided in connection with the bankruptcy. However, debtor's counsel is subject to strict disclosure obligations and failure to satisfy them can lead to disallowance of all or part of fees received or to be received. Finally, even where the disclosure requirements have been fully satisfied, Section 329 authorizes the Court to examine any payments made and any agreement for future payments for reasonableness and to order either disgorgement or cancellation of any agreement, to the extent unreasonable.

The record in this case establishes incomplete and misleading disclosure by Hessinger of its fee arrangement and of its sharing agreement with a third party. Hessinger will be denied all compensation in the absence of good cause shown through a credible, complete and forthright explanation of the circumstances giving rise to this inadequate disclosure. Further, the record establishes less than adequate representation by counsel and inappropriate use of non-professionals in the setting of fees and the counseling of clients. The fee charged appears on its face to be excessive, given the quality of services rendered, the complexity of the case, the Court's understanding of fees for comparable cases in the Phoenix area and the time spent in the representation of these clients. Hessinger will be denied compensation for these services and will be required to disgorge payments already made in the absence of a thorough and adequate explanation of the reasonableness of the charges involved.

In fairness, Hessinger has yet to be given a plenary opportunity to defend the reasonableness of its fee or the circumstances surrounding its failure to disclose. Against the facts already established, Hessinger will now be given that opportunity. In the meantime, all collection activity is to cease.

**THEREFORE, IT IS ORDERED AS FOLLOWS:**

1. The Debtors' obligations under their pre-petition fee agreement with Hessinger are not discharged;

2. Hessinger shall file, within 15 days of this Order, a full explanation, under oath, by a principal of the firm, of any facts or circumstances which justify

the firm's failure to meet the disclosure requirements of Section 329 and Rule 2016;

3. Hessinger shall file, within 15 days of this Order, a request for approval of the fees paid to date, setting forth therein all reasons why Hessinger believes that the fee so charged is reasonable within the meaning of Section 329;

4. Hessinger shall file, within 15 days of this Order, a request for approval of the agreement for fees to be paid in the future, setting forth therein all reasons why Hessinger believes that the agreement is reasonable within the meaning of Section 329;

5. Hessinger, or any collector acting on its behalf, is prohibited from taking any steps to collect any amount due from these Debtors pending disposition of the applications required to be filed pursuant to this order and Hessinger is directed to advise any such "collector" of this Order immediately;

6. If applications are filed as set forth herein, Joseph Hessinger will be required to appear in person to address the reasonableness of the fees and the nature of the business operations of Hessinger & Associates;

7. Failure of Hessinger to comply with paragraphs 2 through 6 of this Order in the time periods stated, shall automatically result in an order requiring disgorgement of all fees paid to date and cancellation of the agreement.