**In re Connie L. MARTIN, SSN 460–57–8349, Debtor.**

**Bankruptcy No. 95–23080 MSK.**

United States Bankruptcy Court, D. Colorado.

April 24, 1996.

Mark E. Henze, Denver, CO, for Sharon W. Grossenbach.

Joanne Speirs, Denver, CO, for U.S. Trustee.

## MEMORANDUM OPINION AND ORDER REGARDING UNITED STATES TRUSTEE'S APPLICATION FOR AN EXAMINATION OF ATTORNEY'S FEES AND FEE AGREEMENT

MARCIA S. KRIEGER, Bankruptcy Judge.

THIS MATTER comes before the Court on the United States Trustee's Application for an Examination of Attorney's Fees and Fee Agreement pursuant to 11 U.S.C. § 329 and Fed.R.Bankr.P. 2017 (§ 329 Motion) and the Response of Debtor's former counsel, Sharon W. Grossenbach. This matter was set for evidentiary hearing on March 28, 1996. Appearing on behalf of Sharon W. Grossenbach was Mark E. Henze. Appearing on behalf of the U.S. Trustee was Joanne Speirs. Having reviewed the Motion, briefs filed by both parties and considered the evidence and argument presented at hearing, the Court makes findings of fact and conclusions of law.

### I. JURISDICTION

This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1334(a). It is a core matter under 28 U.S.C. § 157(b)(2)(A) and (I), and venue is proper.

### II. FACTS

1. The above-captioned case was initiated by voluntary petition filed under Chapter 7 of the United States Bankruptcy Code on December 13, 1995.

2. At all times relevant hereto the Debtor was represented in this case by Monty Hogue (Hogue), an attorney employed as an associate by Sharon W. Grossenbach (Grossenbach).[1]

3. The Debtor initially consulted with Hogue for the purposes of obtaining information with regard to a potential bankruptcy filing. The Debtor inquired about bankruptcy because she was being vigorously pursued by a collection company holding a judgment against her. At the initial consultation, Hogue advised the Debtor of alternatives under Chapter 7 and Chapter 13 and offered two fee arrangements for a Chapter 7 case. The fee options were either a flat fee of $500, plus the filing fee of $175, payable prior to the bankruptcy filing or a flat fee of $600 plus the $175 filing fee, with the filing fee payable prior to the filing and the flat fee payable in monthly installments of $75 beginning approximately one month after the bankruptcy was filed.

4. The Debtor decided to file a Chapter 7 bankruptcy case and chose the second fee arrangement. On or about December 7, 1995, she executed a written fee agreement (Fee Agreement) which provides in pertinent part:

a. Grossenbach would provide legal representation to the Debtor in a Chapter 7 "including all required preparation and filing of the petition and other supporting documents and appearance at the first meeting of creditors."

b. For such services the Debtor would pay the sum of $775 comprised of $600 in attorney fees and a court filing fee of $175. The filing fee was paid as a retainer on December 7, 1995. The attorney fees were payable in installments of $75 per month beginning on January 13, 1996 and due on the 13th day of each month thereafter until paid in full.

c. Additional charges would be made for identified post-petition services such as "defending any objection in a Chapter 7 case [sic]," a "2004 examination," and "appearing at a reaffirmation hearing," billed at an hourly rate of $175. For other post-petition services an additional flat fee would be charged. These include conversion from one chapter to another, adding a creditor to the case, and $100 for any unattended § 341 meeting.

d. In addition to the court filing fee, the Debtor agreed to pay for all costs incurred in connection with the case.

---

1. After the § 329 Motion was filed, Grossenbach requested and was granted permission to withdraw from representation of the Debtor.

e. In the event that the Debtor failed to timely pay the required monthly amounts, she would be assessed a $25 late charge. Grossenbach was entitled to accelerate the entire obligation if it became more than ten days overdue and cease post-petition representation until the sum was paid. If the matter was referred to collection, the Debtor was obligated for attorney fees incurred.

f. In the event the case was dismissed through no fault of Grossenbach or at the request of the Debtor, the Fee Agreement converted to an hourly arrangement with all time "invested in the case" billed against the fees paid at the rate of $175 per hour.

5. Neither Grossenbach nor Hogue discussed the dischargeability of the pre-petition fees which were unpaid at the time of the bankruptcy filing with the Debtor or advised her that collection of the pre-petition fee was stayed during the pendency of the bankruptcy. Grossenbach and Hogue believed that the pre-petition fee obligation was not dischargeable and therefore no legal advice was required.

6. The Debtor paid the $175 retainer, but has paid none of the required installments. Grossenbach has not initiated any collection proceeding, assessed a late charge, or accelerated the obligation.

7. Grossenbach filed an initial disclosure pursuant to Fed.R.Bankr.P. 2016 which stated that the fee charged in the case would be $600, none of the fee had been paid as of the date of the filing of the bankruptcy, and that the entirety of the fee would be collected from the Debtor.

8. Neither the Debtor nor the United States Trustee complains about the competency of Grossenbach's representation. Other than failing to advise the Debtor as to the dischargeability of the attorney fee obligation, there is no evidence that Grossenbach or Hogue has represented the Debtor in other than a competent and professional manner.

## III. ANALYSIS

The United States Trustee requests that the Court cancel the fee arrangement between Grossenbach and the Debtor pursuant to 11 U.S.C. § 329(b) on the grounds that: (1) Grossenbach's fee disclosure is inadequate; (2) the Debtor's obligation under the Fee Agreement is dischargeable; and (3) the Fee Agreement created an impermissible conflict of interest between the Debtor and Grossenbach. Grossenbach responds that: (1) her fee disclosure complies with Fed. R.Bankr.P. 2016; (2) the Debtor's obligation under the Fee Agreement is nondischargeable; (3) the Fee Agreement constitutes an executory contract which has been assumed by the Debtor; and (4) under § 329 the Court is limited to reducing the fee charged to the extent that it is excessive. The arguments have been well presented by both parties.

Section 329 regulates an attorney's transactions with a debtor. It requires the attorney to disclose the terms of compensation and empowers a court to cancel the agreement for compensation or order the return of payments made if the compensation exceeds the reasonable value of the attorney's services.

§ 329. Debtor's transactions with attorneys.

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

(1) the estate, if the property transferred—

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

(2) the entity that made such payment.

Two rules of bankruptcy procedure implement § 329. Rule 2016 governs applications by professionals, including a debtor's attorney, for interim and final compensation from the estate and details the information required on the application. Fed.R.Bankr.P. 2016(a). In addition, it requires the attorney for every debtor to file a disclosure statement identifying any fee arrangements and compensations paid or promised to the attorney. Fed.R.Bankr.P. 2016(b). It also contains a requirement that the disclosure be supplemented should any additional fee arrangements or payments be made. *Id.* Rule 2017 specifies the procedure by which payments to a debtor's attorney, both before and after commencement of the case, are reviewed under § 329. In both situations, a court is required to determine whether the fees charged or to be charged are excessive.

■ The purpose of § 329 is to regulate an attorney's transactions with a debtor, regardless of the chapter under which the bankruptcy is filed. It was enacted in response to the concern that "[p]ayments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and [therefore] should be subject to careful scrutiny". *Land v. First National Bank of Alamosa (In re Land),* 116 B.R. 798, 804 (D.Colo.1990), *aff'd* 943 F.2d 1265 (10th Cir. 1991) (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 329 (1977), S.Rep. No. 989, 95th Cong., 2nd Sess. 39–40 (1978)). Section 329 empowers the bankruptcy courts to protect debtors from overreaching by their counsel under circumstances where debtors are vulnerable and in need of prompt legal services. As a consequence, a court's review of the reasonableness of compensation under § 329 is a holistic review of the entire attorney/debtor relationship. Compensation to a debtor's counsel may be considered excessive for a number of reasons including the size of the fee, the nature of the services provided, failure to disclose the information required by Rule 2016(b), unethical conduct or other causes. *See e.g., Quiat v. Berger (In re Vann),* 136 B.R. 863 (D.Colo.1992); *In re Land,* 943 F.2d 1265 (10th Cir.1991).

## A. Adequacy of Disclosure

■ The United States Trustee argues that Grossenbach's disclosure with regard to the Fee Agreement was inadequate because it did not disclose all of the terms of the Fee Agreement, particularly Grossenbach's remedies should the Debtor default in making the post-petition installment payments. Grossenbach argues that the disclosure satisfies the requirements of § 329(a) and Rule 2016(b). I agree with Grossenbach.

The disclosure requirements of § 329 and Rule 2016 do not expressly require that the entirety of a fee agreement be disclosed. Instead, these provisions require disclosure only as to the compensation paid or agreed to be paid and whether such compensation is to be shared. Section 329(a) requires only disclosure of the compensation paid or agreed to be paid for services rendered or to be rendered in contemplation of or connection with the bankruptcy case and the source of the compensation. Rule 2016(b) requires disclosure of the particulars of any sharing of fees other than with a member or associate of the attorney's law firm.

■ The purpose of the disclosure requirement is to alert the United States Trustee, the court and any creditor as to the amount of the compensation, when it is to be paid, and to whom it is to be paid. The disclosure requirements are not broad in scope, but they are absolute and include a duty of supplementation. Thus they reflect a balancing between the burden of disclosure upon an attorney and the need for information in order to scrutinize the attorney's transactions with a debtor. The Code and Rules provide opportunity for further investigation by the United States Trustee or creditors at the § 341 meeting, by examination conducted pursuant to Fed.R.Bankr.P. 2004, or through use of formal discovery pursuant

to Fed.R.Bankr.P. 9014 once a motion has been filed under § 329.

The statement filed by Grossenbach complies with the requirements of § 329 and Rule 2016(b). It discloses the amount of compensation, when the compensation is to be paid, and to whom the compensation is to be paid. While more information might be of assistance, such information is not required and therefore its absence is not a basis for canceling the fee arrangement.

## B. The Fee Agreement

Alternatively, the United States Trustee argues that the fee arrangement should be canceled because the Fee Agreement creates a pre-petition dischargeable debt and a conflict of interest between Grossenbach and the Debtor. Grossenbach has a number of responses.

■■■ Several of Grossenbach's arguments obscure the fundamental issue and can be disposed of readily. First, Grossenbach argues that the Fee Agreement is an executory contract which the Debtor has assumed. This argument is misdirected. While pre-petition contracts can be executory, they are assumable only by the bankruptcy estate, which right is exercised in a Chapter 7 case by the Trustee. 11 U.S.C. § 365(a). In this case the Trustee has not assumed the Fee Agreement and therefore it is not an obligation of the estate.

■■■ Grossenbach next argues that the Court's review under § 329 is limited to the determination of a reasonable fee by arithmetic calculation. Grossenbach argues that the determination of a reasonable fee is not guided by the considerations set out in 11 U.S.C. § 330 since reference to the attorney for the debtor was removed from § 330(a) in the 1994 Amendments. *See In re Friedland,* 182 B.R. 576, 578 (Bankr.D.Colo.1995). Grossenbach's interpretation of the provisions of § 329 and Rule 2017 ignores the holistic nature of the review of an attorney's transactions with a debtor. The compensation to be paid to an attorney can be deemed excessive for a host of reasons, including but not limited to an attorney's failure to perform agreed upon services, failure to comply

with the disclosure requirements, the existence of conflicts of interest, and the like. *See e.g., Vann,* 136 B.R. at 868; *In re Mattocks,* 15 B.R. 379, 383 (Bankr.E.D.N.Y.1981).

## 1. Dischargeability of the Fee Obligation

■■■ The pivotal issue in this matter is whether a Fee Agreement created a dischargeable debt, and therefore a conflict of interest between Grossenbach and the Debtor, which requires cancellation of the fee arrangement. I have found no binding Tenth Circuit authority. A number of courts have recently considered the dischargeability of debts arising from pre-petition attorney fee agreements which set a flat fee for representation and provide for post-petition payment of the fee. The United States Trustee relies upon four opinions determining such debts to be dischargeable. *In re Hessinger & Assoc.,* 192 B.R. 211, 217–18 (N.D.Cal. 1996); *Hessinger & Assoc. v. Voglio (In re Voglio),* 191 B.R. 420, 422 (D.Ariz.1996); *Hessinger & Assoc. v. U.S. Trustee (In re Biggar),* 185 B.R. 825, 829 (N.D.Cal.1995); *In re Symes,* 174 B.R. 114, 119 (Bankr. D.Ariz.1994). Grossenbach relies upon *In re Mills,* 170 B.R. 404, 412 (Bankr.D.Ariz.1994), in which the court determined such a debt to be nondischargeable.

All of the above cases concern one law firm, Hessinger & Associates. Several of the opinions describe problems in the adequacy of the representation provided to the debtors. Grossenbach argues that the reasoning of such opinions must be confined to the specific facts in each case. I disagree. Although there is no issue in this case as to Grossenbach's competency or rendering of legal services, the nature of the obligation and the applicable law is the same in those opinions as in this matter.

*Hessinger, Voglio, Biggar* and *Symes* all conclude that an unpaid debt arising from a pre-petition attorney fee agreement is dischargeable. The fact that the attorney's fees are incurred in connection with the bankruptcy case and that payment is to be made in installments does not make the debt nondischargeable. The reasoning in these cases is that the pre-petition fee agreement gives

rise to a debt which, if unpaid at the time of the bankruptcy filing, falls within the definition of a claim pursuant to 11 U.S.C. § 101(5)(A). Section 727(b) of the Code discharges the debtor "from all debts that arose before the date of the order for relief under this chapter and any liability on a claim ... as if the claim had arisen before the commencement of the case ... except as provided under § 523". Exceptions to discharge in § 523 do not include, expressly or by implication, pre-petition debts for attorney fees.

The courts in *Hessinger, Voglio,* and *Biggar* consider and reject the reasoning of *Mills.* In *Mills,* the court perceived an irreconcilable conflict between the regulatory provisions of § 329 and the discharge provisions of § 727, and identified important public policy concerns with regard to the ability of indigent debtors to obtain legal representation for purposes of bankruptcy. To reconcile the conflicting provisions of § 329 and § 727 and to provide maximum access to legal representation in bankruptcy, the court in *Mills* concluded that debts for attorney fees incurred in connection with the case are nondischargeable.

■■■ This Court is persuaded by the analysis in *Hessinger, Voglio, Biggar* and *Symes* and respectfully disagrees with *Mills.* Rules of statutory construction compel a strict and literal interpretation of §§ 727 and 329. Courts are admonished to apply the following principle of statutory construction:

> [I]f the statutory language is unambiguous, in the absence of "a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive" [citation omitted]. *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981).

This Court perceives no conflict in the provisions of §§ 329 and 727 because they serve different purposes. Section 329 regulates transactions between the debtor's attorney and the debtor in all cases under the Code. Its purpose is to prevent the overreaching of debtor's attorney in the bankruptcy process. It does not speak to the effect of a discharge upon a debtor's prepetition obligation to the attorney. In contrast, § 727 creates and defines the substan-tive rights of discharge. It addresses the fundamental goals of bankruptcy, a fresh start for the debtor and equal treatment of creditors. Had Congress intended to create an exception to discharge for unpaid attorney fees presumably it would appear in § 523.

Though I agree with the court in *Mills* that there are legitimate and important public policy concerns about access to the bankruptcy system for indigent debtors, *Biggar* correctly concludes that:

> Public policy concerns cannot trump the plain language of the Bankruptcy Code. Moreover, the public policy concerns are not one-sided. On the other side is the public interest in providing an honest debtor with a fresh start unhindered by debt. If Congress wishes to amend the code to provide an exception for the debt owed to an attorney who has prepared and filed a bankruptcy petition it may, but it is not the Court's role to create such an exception. *Biggar,* 185 B.R. at 829.

There are any number of creative solutions which can assist indigent debtors who have difficulty raising funds for legal representation prior to filing a bankruptcy case. Debtors commonly defer payment of other debts or borrow from family and friends in order to pay attorneys. Attorneys can lessen the financial burden by quantifying the fee for pre-petition and post-petition services, requiring only payment for pre-petition services prior to the filing. If a debt for fees will be dischargeable, some attorneys accept payment by a third-party guarantor. Some courts authorize reaffirmation of the debt. *See In re Perez,* 177 B.R. 319 (Bankr.D.Neb. 1995).

### 2. Conflict of Interest

■■■ Under § 329, ethical conflicts can diminish the value of services to a client, making the fee charged "excessive". *Vann,* 136 B.R. at 871 (fees denied in entirety due to counsel's conflict of interest in representing debtor and creditors in case); *In re McNar, Inc.,* 116 B.R. 746, 750 (Bankr. S.D.Cal.1990), *aff'd in pertinent part,* 133 B.R. 561 (9th Cir. BAP 1991) (denial of fees in face of conflicts within court's discretion); *In re Whitman,* 51 B.R. 502, 508 (Bankr.

D.Mass.1985) (permitting a small portion of fees for services rendered to Chapter 13 debtor); *In re Damon,* 40 B.R. 367, 377–78 (Bankr.S.D.N.Y.1984) (impropriety, non-disclosure, and incompetence preclude award of attorney fees); *Barton v. Chrysler (In re Paine),* 14 B.R. 272, 275 (W.D.Mich.1981) (denying fees in toto to attorney for involuntary debtor under former Act); *In re Mattocks,* 15 B.R. at 386 ("attorneys for debtors in bankruptcy proceedings are 'officers of the court and fiduciaries' ... where attorneys fail to live up to their obligations as such officers and fiduciaries all fees received by them should be required to be returned, with interest"). *In re Devers,* 33 B.R. 793 (D.D.C.), *appeal dismissed,* 729 F.2d 863 (D.C.Cir.1984) (outlining analysis required to find unethical conduct lessened value of lawyer's services to client); *In re Watson Seafood & Poultry Co.,* 40 B.R. 436, 439–40 (Bankr.E.D.N.C.1984) (once conflict of interest is shown, attorney fees should be entirely denied, even though the services rendered had intrinsic value and brought a benefit to the estate). *See also In re Global Marine, Inc.,* 108 B.R. 998, 1004–06 (Bankr.S.D.Tex. 1987), *appeal dismissed,* 108 B.R. 1007 (S.D.Tex.1988) (holding that court may deny or reduce fees based on ethical violations, but finding none); *In re Ochoa,* 74 B.R. 191, 197 (Bankr.N.D.N.Y.1987) (lack of quality representation justified denial of all attorney fees); *In re GHR Energy Corp.,* 60 B.R. 52, 68 (Bankr.S.D.Tex.1985) (based on equities of case court would not deny all attorney fees based solely on technical findings of interestedness). The Supreme Court addressed the effect of an ethical violation upon the reasonableness of a fee in the bankruptcy context in *Woods v. City National Bank & Trust Co.,* 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820 (1941).[2]

"Reasonable compensation for services rendered" necessarily implies loyal and disinterested service in the interest of those for whom the claimant purported to act. Where a claimant, who represented members of the investing public, was serving more than one master or was subject to conflicting interests, he should be denied compensation. It is no answer to say that fraud or unfairness were not shown to have resulted. The principle enunciated by Chief Justice Taft in a case involving a contract to split fees in violation of the bankruptcy rules, is apposite here: "What is struck at in the refusal to enforce contracts of this kind is not only actual evil results but their tendency to evil in other cases." Furthermore, the incidence of a particular conflict of interest can seldom be measured by any degree of certainty. The bankruptcy court need not speculate as to whether the result of the conflict was to delay action where speed was essential, to close the record of past transactions where publicity and investigation were needed, to compromise claims by inattention where vigilant assertion was necessary, or otherwise to dilute the undivided loyalty owed to those whom the claimant purported to represent. Where an actual conflict of interest exists, no more need be shown in this type of case to support a denial of compensation. *Id.* at 268, 61 S.Ct. at 497.

An actual conflict of interest can justify total disallowance of fees, cancellation of a fee agreement, or a court can determine the effect of the conflict of interest and deny fees in proportion to the scope of the conflict. *See Devers, supra; Woods, supra; Land, supra.*

■ The existence of a conflict of interest does not require bad motive or intent. Most often it arises where the attorney's duty to one client conflicts with his/her duty to another or with the attorney's self-interest. In Colorado, representation of a client where there is conflict of interest between the attorney's self-interest and the legal interests of the client is prohibited by the Colorado Rules of Professional Conduct. Rule 1.7(b) provides:

**2.** *Woods* involved a case under Chapter X of the Bankruptcy Act in which the indenture trustee, a bondholders committee and committee's counsel requested fees and expenses. The bankruptcy trustee objected because counsel to the committee was also counsel to the indenture trustee and other interested parties. Under § 221 of the Act, the court was authorized to review all fees and expenses in connection with the reorganization proceeding for "reasonableness".

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interest. . . .

The comment following Rule 1.7 offers explanation:

Loyalty to a client is also impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests. . . . The lawyer's own interest should not be permitted to have adverse affect on the representation of the client.

■ In this case, the Fee Agreement itself created no conflict of interest between Grossenbach and the Debtor. Payment of fees to an attorney over time is common and does not pit the attorney's interest against that of the client. However, because legal fees were owed by the Debtor to Grossenbach, the filing of the bankruptcy petition conferred a new relative legal status upon each. Ms. Martin became a debtor whose legal interest was to obtain the broadest possible discharge of pre-petition debts. Grossenbach became a creditor whose self-interest was to except the pre-petition attorney fee obligation from discharge. Since the bankruptcy filing there has been a conflict between Grossenbach's duty to the Debtor and her own self-interest.

This conflict of interest has impaired Grossenbach's representation of the Debtor in two ways. First, the Fee Agreement contains a number of remedies designed to coerce the Debtor's post-petition payment of the pre-petition debt. If the Debtor defaults in payment of the post-petition installments, the debt can be accelerated, bears interest, accrues a late charge, and if submitted to collection may result in additional attorney fees. The Fee Agreement also authorizes Grossenbach to withhold post-petition representation if the pre-petition debt is not paid as required. For any other creditor, exercise of such remedies to collect a pre-petition debt would be stayed as acts to "recover a claim against the debtor that arose before the commencement of the case". 11 U.S.C. § 362(a)(6).

The second problem compounds the first. A debtor expects and is entitled to legal advice from his/her attorney as to the dischargeability of particular debts. In this case, the Debtor was given no advice with regard to the dischargeability of the fee obligation. Both Grossenbach and Hogue testified that no advice was given because they concluded the pre-petition attorney fee obligation was nondischargeable under the *Mills* rationale. Had *Mills* been binding precedent in this jurisdiction, such conclusion would have been justified. But an accurate advisement of the law would have required disclosure to the Debtor that the issue was unresolved in the Tenth Circuit, but had been considered by several courts in the Ninth Circuit, the majority of which concluded the debt was dischargeable. The combination of the Fee Agreement terms and Grossenbach's failure to advise the Debtor leaves the impression that the pre-petition attorney fee debt is not discharged and is collectible during and after the bankruptcy case. This impression obviously benefits Grossenbach's interests and impairs the Debtor's.

The conflict and its results are examples of overreaching by Debtor's counsel which § 329 is designed to address. The fact that the debt is dischargeable does not eliminate or protect the Debtor from the conflict of interest. Thus, this case illustrates the difference between the regulatory function of § 329 and the discharge function of § 727.

■ Because the conflict of interest arose on the filing date, only the post-petition fees are unreasonable and therefore excessive. However, no apportionment between pre-petition and post-petition fees is possible because a flat fee for both was charged and no evidence for separate calculation was presented. The Court cannot speculate as to the portion of the fee incurred either prior or subsequent to the conflict; therefore entire fee is determined to be excessive and the Fee Agreement is canceled.

**IT IS THEREFORE ORDERED** that the fee agreement between Sharon W. Grossenbach and Connie L. Martin for representation prior to and in connection with Bank-

ruptcy Case No. 95–23080 is canceled and declared null and void.